133 T.C. No. 17


UNITED STATES TAX COURT


ESTATE OF ANNE W. MORGENS, DECEASED, JAMES H. MORGENS, EXECUTOR,
Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 26212-06.                    Filed December 21, 2009.


        Husband (H) and wife (D) established a revocable
inter vivos trust.  After H's death the portion of the
trust representing H's one-half of the community
property was allocated to a residual trust in which D
received an income interest for life.  A qualified
terminable interest property (QTIP) election under sec.
2056(b)(7), I.R.C., was made on H's estate tax return
for the property passing to the residual trust, thereby
allowing H's estate to claim a marital deduction for
the full value of the QTIP.

        During D's lifetime the trust was divided into two
trusts.  D made gifts of her qualifying income
interests in both trusts, which in turn triggered
deemed transfers of the QTIP remainder under sec. 2519,
I.R.C.  Recipients of the QTIP paid gift taxes.  D died
within 3 years of the transfers.  R determined that the
amounts of gift tax paid by the recipients of the QTIP

remainder are includable in D's gross estate under sec. 2035(b), I.R.C.

Held: The amounts of gift tax paid by the recipients of the QTIP remainder are includable in D's gross estate under sec. 2035(b), I.R.C.

John W. Porter, J. Graham Kenney, and Keri D. Brown, for petitioner.

James A. Whitten, for respondent.

OPINION

MARVEL, Judge: Respondent determined a $4,684,430 deficiency in the Federal estate tax of the Estate of Anne W. Morgens (Mrs. Morgens). The sole issue[1] for decision is whether the amounts of gift tax paid with respect to Mrs. Morgens' deemed

_____

[1]Respondent listed several adjustments in the explanation of adjustments section of the estate tax notice of deficiency. Of those adjustments, the estate concedes: (1) Adjustments related to the decrease in the gift tax refund on Schedule F, Other Miscellaneous Property Not Reportable Under Any Other Schedule; (2) the increase in funeral and administrative expenses on Schedule J, Funeral Expenses and Expenses Incurred in Administering Property Subject to Claims; and (3) charges arising from a recomputation of the adjusted gift tax payable. The petition challenges respondent's determinations concerning inclusion in the gross estate of the amounts of gift tax paid for 2000 and 2001 and generation-skipping tax and an adjustment related to the State death tax credit. The briefs address only the issue of inclusion in the gross estate of the gift tax paid with respect to 2000 and 2001 gifts. Accordingly, we deem the remaining issues raised in the petition that were not already conceded or resolved by agreement or opinion conceded. See Rule 151(e)(4) and (5), Tax Court Rules of Practice & Procedure; Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989).

gifts of remainder interests in qualified terminable interest property (QTIP) are includable in her gross estate under section 2035(b).[2]

## Background

The parties submitted this case fully stipulated under Rule 122. We incorporate the stipulated facts into our findings by this reference. Mrs. Morgens was a resident of California when she died on August 25, 2002, and her estate is administered there. The estate's executor, James H. Morgens (James Morgens), Mrs. Morgens' son, lived in Georgia when he petitioned the Court on behalf of the estate.

## I. Family History and the Establishment of the Residual Trust

Mrs. Morgens was born on August 11, 1909. On September 16, 1935, she married Howard J. Morgens (Mr. Morgens) and remained married to him until his death on January 27, 2000. The couple had two sons, Edwin H. Morgens (Edwin Morgens) and James Morgens, and a daughter, Joanne Morgens Bretz (Joanne Bretz). Joanne Bretz predeceased Mr. Morgens. The couple also had several grandchildren, including Matthew H. Bretz (Matthew Bretz) and Anne Bretz Carpenter (Anne Carpenter); Matthew Bretz and Anne Carpenter were children of Joanne Bretz.

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the date of decedent's death, and all Rule references are to the Tax Court Rules of Practice and Procedure.

On February 14, 1991, Mr. and Mrs. Morgens, as settlors, executed the Morgens Family Living Trust Agreement establishing a revocable trust (trust) to administer assets they contributed to the trust.[3]  Mr. Morgens was the original trustee of the trust. Mr. Morgens and Mrs. Morgens later executed several amendments. When Mr. Morgens died, the disposition and management of the trust assets were governed by the second, third, fourth, and fifth amendments to the Morgens Family Living Trust Agreement (amended trust agreement).

Under the amended trust agreement, after the death of the first spouse, the corpus of the trust was to be distributed into two separate trusts:  The survivor's trust and the residual trust.  The portion of the trust representing the surviving spouse's one-half of the community property would be allocated to the survivor's trust, and the portion representing one-half of the community property of the first spouse to die would be allocated to the residual trust.

With respect to the residual trust,[4] the amended trust agreement provided in pertinent part that after certain gifts,[5]

---

[3]Exhibit A described the property the settlors delivered to the trustee, but Exhibit A was not attached to the copy of the Morgens Family Living Trust Agreement in the record.

[4]This case concerns only issues and facts related to the residual trust.

[5]The amended trust agreement required the trustees to
(continued...)

the balance of the residual trust would remain in trust for the benefit of the surviving spouse[6] for that spouse's lifetime. The surviving spouse had an income interest in the trust that entitled her to receive the net income of the trust in quarter-annual or more frequent installments during her life (income interest). The trustee had the power to "pay to or apply for the benefit of the Surviving Spouse as much of the principal of the trust as the Trustee, in the Trustee's discretion shall consider necessary for the Surviving Spouse's proper support, health, maintenance, and execution"[7] (principal invasion interest). After the surviving spouse's death, the remainder of the residual trust was to be divided into 10 equal shares, with Edwin Morgens receiving 3 shares, James Morgens receiving 5 shares, and the trusts for the benefit of Anne Carpenter and Matthew Bretz each receiving 1 share.

In accordance with the amended trust agreement, when Mr. Morgens died, the trust was divided into the survivor's trust and the residual trust. Mrs. Morgens, James Morgens, and Edwin

_____

[5](...continued)
establish separate subtrusts for the settlors' then-living grandchildren and to distribute certain assets to Edwin and James Morgens.

[6]The phrase "the surviving spouse" refers to the second spouse to die.

[7]The parties stipulated that the amended trust agreement allowed the trustees to invade the principal for the purpose of "education" instead of "execution".

Morgens became the cotrustees of the residual trust, but on January 29, 2000, Mrs. Morgens resigned as a cotrustee. On October 25, 2000, Mr. Morgens' estate filed a Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return. On Mr. Morgens' estate's Form 706, the executor of his estate made an election under section 2056(b)(7) for the property passing to the residual trust, thereby qualifying all such property for the marital deduction.

## II. Disclaimers of Interests and the Division of the Residual Trust

On September 22, 2000, Mrs. Morgens disclaimed her right to the principal invasion interest in the residual trust. On the same day, Edwin Morgens, his wife Linda Morgens (Linda Morgens), their only child Lauren Morgens (Lauren Morgens), individually, and Lauren Morgens, as guardian ad litem for the unborn and unascertained children of Edwin Morgens, Linda Morgens, and Lauren Morgens, disclaimed their interests in and powers over the portion of the residual trust that Edwin Morgens had been entitled to receive under the amended trust agreement. As a result of the disclaimers, Edwin Morgens' interest in the three shares of the residual trust remainder (Edwin Morgens' former interest) passed to Mrs. Morgens.[8] However, Mrs. Morgens

_____

[8]The disclaimer by Edwin Morgens resulted in Edwin Morgens' former interest's passing in the same manner as by intestacy under State law. Linda Morgens, as Edwin Morgens' spouse, and
(continued...)

executed a partial disclaimer of that interest, retaining only a special power of appointment to appoint the interest to Mr. Morgens' issue. She exercised that power of appointment to appoint Edwin Morgens' former interest five-sevenths to James, one-seventh retained in trust for Anne Carpenter, and one-seventh retained in trust for Matthew Bretz.[9]

In November 2000 Mrs. Morgens and James Morgens, Anne Carpenter, and Matthew Bretz, as the remainder beneficiaries of the residual trust, entered into an indemnification agreement. In consideration of any gifts by Mrs. Morgens of her income interest in the residual trust, the remainder beneficiaries agreed to indemnify Mrs. Morgens and her estate against certain gift or estate taxes.

On a date that does not appear in the record, Edwin and James Morgens, as cotrustees of the residual trust, petitioned

---

[8](...continued)
Lauren Morgens, as his only child, became entitled to Edwin Morgens' former interest. The disclaimers by Linda Morgens and Lauren Morgens individually allowed Edwin Morgens' former interest to pass to the unborn and unascertained issue of Edwin Morgens, Linda Morgens, or Lauren Morgens. Because of the disclaimer by Lauren Morgens as guardian ad litem for the unborn and unascertained issue of Edwin Morgens, Linda Morgens, or Lauren Morgens, Edwin Morgens' former interest passed to Mrs. Morgens.

[9]On Sept. 14, 2000, the Superior Court of the State of California for the County of Monterey (superior court) entered an order confirming the effect of all disclaimers of Edwin Morgens' former interest and of Mrs. Morgens' partial disclaimer and exercise of her special power of appointment to appoint Edwin Morgens' former interest.

the superior court on behalf of the residual trust to sever the residual trust into two separate trusts.[10]  On December 8, 2000, the superior court held a hearing, and on December 11, 2000, it granted the petition and ordered that the residual trust be split into residual trust A and residual trust B.  Residual trust A was funded with assets of the residual trust consisting of 115,000 shares of Proctor & Gamble common stock, and residual trust B was funded with the remaining assets of the residual trust.

The original terms of the residual trust, except the spendthrift provision that applied to Mrs. Morgens, became applicable to residual trusts A and B.  Accordingly, Mrs. Morgens maintained a right to the income from residual trusts A and B for life.  Pursuant to Mrs. Morgens' exercise of the special power of appointment over Edwin Morgens' former interest and the terms of the residual trust pertaining to the remaining seven shares of the residual trust, the remainder beneficiaries of residual trust A were James Morgens, Anne Carpenter, and Matthew Bretz, and the remainder beneficiaries of residual trust B were James Morgens, Anne Carpenter, Matthew Bretz, and trusts for the benefit of Anne Carpenter and Matthew Bretz.

---

[10]The superior court order indicates that James and Edwin Morgens sought a division of the residual trust to allow Mrs. Morgens to make two gifts of income interests in separate years.

III. <u>Section 2519 Deemed Transfers</u>

On December 8, 2000, Mrs. Morgens transferred her income interest in residual trust A as gifts to the remainder beneficiaries in the same proportions as their respective remainder interests,[11] thereby triggering a transfer of the QTIP remainder (2000 deemed transfer) under section 2519.[12] On the date of the gifts, the corpus of residual trust A consisted of 115,000 shares of Proctor & Gamble common stock with a fair market value of $8,305,300.[13] The gross deemed transfer under section 2519 resulting from Mrs. Morgens' gift of the residual trust A income interest was $6,398,901, calculated by multiplying the fair market value of the corpus ($8,305,300) by the remainder interest factor of 0.77046.[14] On October 13, 2001, Mrs. Morgens timely filed a Form 709, United States Gift (and Generation-

---

[11]Mrs. Morgens' gifts were made on the date of the superior court hearing, and the gifts predate the superior court order granting the petition to split the residual trust into residual trust A and residual trust B.

[12]Because Mrs. Morgens disposed of her qualifying income interest for life in the QTIP, she was treated as transferring all interests in property, other than the qualifying income interest. See sec. 2519(a); sec. 25.2519-1(a), Gift Tax Regs.

[13]The parties stipulated the fair market value of the shares on the basis of the $72.22 average between the highest and lowest selling prices of Proctor & Gamble common stock on Dec. 8, 2000.

[14]The parties stipulated that on the date of the transfer the sec. 7520 interest rate was 7 percent, Mrs. Morgens was 91 years old, and under the actuarial tables under sec. 7520, the applicable remainder interest factor was 0.77046. See sec. 20.2031-7(d)(7), table S, Estate Tax Regs.

Skipping Transfer) Tax Return, for 2000, reporting a 2000 deemed transfer of $4,111,592 computed as the gross amount of the 2000 deemed transfer ($6,398,901) minus the agreed gift tax liability ($2,287,309). The trustees of residual trust A paid the $2,287,309 gift tax associated with the 2000 deemed transfer.

On January 10, 2001, Mrs. Morgens transferred her residual trust B income interest as gifts to the remainder beneficiaries in the same proportions as their respective remainder interests, thereby triggering a transfer of the QTIP remainder (2001 deemed transfer). On the date of the gifts the corpus of residual trust B consisted of (1) a 21.66-percent interest in Phoenix Partners, L.P.,[15] a New York limited partnership, (2) unspecified assets in a Merrill Lynch account, and (3) a receivable and related accrued interest from the survivor's trust. On the date of the gifts the fair market value of the residual trust B assets was $28,319,472. Mrs. Morgens' estate timely filed a Form 709 on her behalf. The trustees of residual trust B paid the $7,692,502 gift tax associated with the 2001 deemed transfer.

On November 24, 2003, Mrs. Morgens' estate amended the 2001 Form 709. On the amended Form 709 the estate used a different

---

[15]On the date of the gift the assets of Phoenix Partners, L.P., consisted of cash, equity securities, debt instruments, and foreign currencies. The record establishes that the survivor's trust held a 22.79-percent interest in Phoenix Partners, L.P.

remainder interest factor[16] and reported lower values for the Phoenix Partners, L.P. interests held by the survivor's trust and residual trust B as of January 10, 2001. Respondent audited the 2001 Form 709, and the executor of Mrs. Morgens' estate and respondent agreed that the gross value of the 2001 deemed transfer was $21,623,964 and that the gift tax liability related to the 2001 deemed transfer was $7,686,208.[17] Accordingly, the agreed value of the 2001 deemed transfer was $13,937,756, computed as the gross amount of the 2001 deemed transfer ($21,623,964) minus the agreed gift tax liability ($7,686,208).

IV. Estate Tax Return of Mrs. Morgens' Estate

The executor of Mrs. Morgens' estate timely filed a Form 706 on November 24, 2003, pursuant to an extension. On the Form 706 the executor did not include the amounts of gift tax paid by the trustees with respect to the 2000 and 2001 deemed transfers in Mrs. Morgens' gross estate, on the ground that those amounts were not gift tax paid by Mrs. Morgens or her spouse within 3 years of

---

[16]The original 2001 Form 709 used an incorrect remainder interest factor of 0.76542 to calculate the remainder value. The parties stipulated that on the date of the transfer the applicable sec. 7520 interest rate was 6.8 percent, Mrs. Morgens was 91 years old, and the remainder interest factor was 0.77577. The stipulated remainder interest factor appears incorrect. See sec. 20.2031-7(d)(7), table S, Estate Tax Regs. (showing the remainder interest factor of 0.77557).

[17]The executor of the estate and respondent agreed that Mrs. Morgens' total gift tax liability for 2001 was $11,440,712.

Mrs. Morgens' death. Respondent audited the Form 706 and issued a notice of deficiency. The estate's executor timely petitioned this Court.

## Discussion

Generally, the Commissioner's determination is presumed correct, and the taxpayer bears the burden of proving it incorrect. Rule 142(a)(1); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933). Although the estate asserts in the petition that the requirements of section 7491(a)(2) are met, we do not need to decide whether the burden of proof shifts to respondent under section 7491(a)(1) because the relevant facts are stipulated and only legal issues remain for us to decide.

I.   Applicable Law

Section 2001(a) imposes a tax on the transfer of the taxable estate of every decedent who is a citizen or resident of the United States at the time of death. Generally, section 2031(a) provides that the value of the decedent's gross estate includes the value of interests described in sections 2033 through 2044. Under section 2035(b), the amount of the decedent's gross estate shall be increased by the amount of any tax paid by the decedent or his estate on any gift made by the decedent or his spouse during the 3-year period preceding the decedent's death. The purpose of this provision is to prevent individuals from reducing

their estate tax liability by making inter vivos transfers shortly before death.  See infra pp. 24-25.

The issue in this case arises at the junction of section 2035(b) and sections 2519 and 2207A(b), which were added to the Code as part of the QTIP regime by the Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 403, 95 Stat. 301.  As discussed below, see infra pp. 14-16, the Economic Recovery Tax Act of 1981 substantially expanded the availability of the marital deduction, see H. Rept. 97-201, at 159 (1981), 1981-2 C.B. 352, 377.

Generally, an estate may deduct from the value of the gross estate the value of property passing from the decedent to his or her surviving spouse (marital deduction).  See sec. 2056(a) and (b)(7); sec. 20.2056(a)-1(a), Estate Tax Regs.  The policy behind the marital deduction rule is that property passes untaxed from the first spouse to die to his or her surviving spouse but is then included in the estate of the surviving spouse.  Estate of Letts v. Commissioner, 109 T.C. 290, 295 (1997), affd. without published opinion 212 F.3d 600 (11th Cir. 2000).  The marital deduction does not eliminate or reduce the tax on the transfer of marital assets out of the marital unit but permits deferral until the death of or gift by the surviving spouse.

Ordinarily, a marital deduction is not allowed for terminable interest property passing from a decedent to his or her surviving spouse (terminable interest rule).  Sec. 2056(b).

A terminable interest is an interest passing from a decedent to his or her surviving spouse that will end on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur. Sec. 2056(b)(1). The terminable interest rule denies a marital deduction if: (1) An interest passing to the surviving spouse is a terminable interest, (2) an interest in such property passes from the decedent to someone other than his or her surviving spouse for less than full and adequate consideration in money or money's worth, and (3) the third person will possess or enjoy the property after the termination or failure of the interest passing to the surviving spouse. Sec. 2056(b)(1). The purpose of the terminable interest rule is to deny the marital deduction for transfers between spouses if the transfer has been structured to avoid estate tax when the surviving spouse dies. Estate of Novotny v. Commissioner, 93 T.C. 12, 16 (1989).

By enacting section 2056(b)(7), Congress provided an exception to the terminable interest rule for QTIP. Section 2056(b)(7) allows a marital deduction for QTIP even though the surviving spouse receives only an income interest and has no control over the ultimate disposition of the property. Under section 2056(b)(7) a decedent may pass to his or her surviving spouse an income interest in property for the spouse's lifetime. After the death of the surviving spouse the property passes to

beneficiaries designated by the first spouse to die.  Three
requirements must be met for terminable interest property to
qualify as QTIP:  (1) The property passes from the decedent, (2)
the surviving spouse has a qualifying income interest for life[18]
in the property, and (3) the executor of the estate of the first
spouse to die makes an affirmative election to designate the
property as QTIP.  Sec. 2056(b)(7)(B).

After the death of the surviving spouse, the value of his
or her gross estate includes the value of QTIP.  See sec. 2044.
The estate of the surviving spouse may recover from QTIP
recipients the amount by which the surviving spouse's estate tax
is increased by the inclusion of the QTIP in the estate.  Sec.
2207A(a).

As a corollary to section 2044, section 2519 addresses
dispositions of QTIP during the surviving spouse's lifetime and
treats any disposition of all or part of a qualifying income
interest for life as a transfer of all interests in QTIP other
than the qualifying income interest.[19]  If gift tax is due upon

---

[18]Sec. 2056(b)(7)(B)(ii) provides that the surviving spouse
has a qualifying income interest for life if the surviving spouse
is entitled to all income from the property, payable annually or
more frequently, or has a usufruct interest for life in the
property, and no person has the power to appoint any part of the
property to any person other than the surviving spouse.

[19]The surviving spouse determines the gift tax consequences
of the disposition of the qualifying income interest for life

(continued...)

the deemed transfer of the QTIP by a surviving spouse, section 2207A(b) permits the surviving spouse to recover the gift tax attributable to the deemed transfer from recipients of the QTIP. Section 25.2207A-1(e), Gift Tax Regs., provides that if the property is in a trust at the time of the transfer, the person receiving the property is the trustee. The right of recovery arises when the surviving spouse subject to section 2519 pays the Federal gift tax. Sec. 25.2207A-1(a), Gift Tax Regs. Failure of the surviving spouse to exercise the right to recover the gift tax under section 2207A(b) is a taxable gift to the persons from whom the surviving spouse could have obtained recovery. See sec. 25.2207A-1(b), Gift Tax Regs.

II. The Parties' Arguments

Respondent argues that Mrs. Morgens was personally liable for the gift tax attributable to the 2000 and 2001 deemed transfers and that section 2207A(b) does not shift her liability to the trustees. Respondent interprets section 2035(b) to require that the amounts of gift tax paid on the 2000 and 2001 deemed transfers be included in Mrs. Morgens' gross estate as gift tax paid within 3 years of her death.

The estate contends that applying section 2035(b) to gift tax paid by the trustees with respect to the 2000 and 2001

---

[19](...continued)
separately under sec. 2511(a). See sec. 25.2519-1(a), (c), Gift Tax Regs.

deemed transfers results in an increased estate tax burden on Mrs. Morgens' estate which is contrary to section 2207A and the legislative intent of the QTIP regime.  The estate suggests that because the ultimate responsibility for paying the gift tax on the section 2519 deemed transfers lies with the trustees of residual trusts A and B, section 2035(b) does not apply.  We disagree and hold that the amounts of gift tax paid with respect to the 2000 and 2001 deemed transfers of the QTIP is includable in Mrs. Morgens' gross estate.

III. Analysis

A.    Mrs. Morgens as the Deemed Donor of the QTIP

Because the executor of Mr. Morgens' estate made a QTIP election under section 2056(b)(7), Mrs. Morgens' transfers of her income interests in residual trusts A and B are treated as her transfers of the QTIP, other than her qualifying income interest, under section 2519.  Although Mrs. Morgens received no economic interest in the QTIP besides income for life, the QTIP regime employs a fiction that treats QTIP as passing entirely from the first spouse to die to the surviving spouse.  Section 2056(b)(7) provides in pertinent part:

> (A)  In general.--In the case of qualified terminable interest property--
>
> > (i) for purposes of subsection (a), such property shall be treated as passing to the surviving spouse, and
> >
> > (ii) for purposes of paragraph (1)(A), no

> part of such property shall be treated as passing
> to any person other than the surviving spouse.

Although only a life interest actually passes from the first spouse to die to his or her surviving spouse, the entire QTIP obtains the deferral benefit of the marital deduction and escapes inclusion in the gross estate of the first spouse to die. Estate of Higgins v. Commissioner, 91 T.C. 61, 68 (1988), affd. 897 F.2d 856 (6th Cir. 1990).

Inclusion in the transfer tax base of the surviving spouse is the quid pro quo for allowing a marital deduction to the estate of the first spouse to die. Cf. Estate of Mellinger v. Commissioner, 112 T.C. 26, 35 (1999). In the case of QTIP, such inclusion occurs either at the death of the surviving spouse, see sec. 2044(a), or upon a lifetime disposition of his or her qualifying income interest, see sec. 2519. In sections 2044 and 2519 the Code in essence continues the deemed transfer premise of section 2056(b)(7) and treats the surviving spouse as if he or she owned the QTIP outright. For example, section 2044 provides that for purposes of the estate and generation-skipping tax chapters of the Code, the QTIP includable in the gross estate of the surviving spouse shall be treated as property passing from the surviving spouse. Although section 2519 does not explicitly state that QTIP is deemed to pass from the surviving spouse, section 25.2519-1(a), Gift Tax Regs., states that for purposes of

the estate and gift taxes chapters of the Code the surviving spouse is treated as transferring the QTIP.

Although the surviving spouse is deemed to first receive and then transfer QTIP either at his or her death or inter vivos under the QTIP provisions, the legislative history accompanying the enactment of the QTIP provisions reiterates that the QTIP regime employs a fiction of transfers to and from the surviving spouse. For example, the House Ways and Means Committee report (report) states that under section 2044(c), property subject to a section 2056(b)(7) election shall be treated as property passing to the surviving spouse, although she does not receive the right to control the ultimate disposition of QTIP. H. Rept. 97-201, supra at 161, 1981-2 C.B. at 378. The report also states that if the property is subject to gift tax as a result of the surviving spouse's lifetime transfer of the qualifying income interest, the entire value of the property, less amounts received by the surviving spouse upon disposition, will be treated as a taxable gift by the surviving spouse. Id. Because the Code treats the surviving spouse as transferring QTIP, Mrs. Morgens is the deemed donor of the QTIP.[20]

---

[20]In Estate of Mellinger v. Commissioner, 112 T.C. 26 (1999), we refused to equate deemed ownership of QTIP with outright ownership in an estate valuation context. In Estate of Mellinger v. Commissioner, supra at 26, we considered whether for valuation purposes the stock held in a QTIP trust established by the first spouse to die should be aggregated with stock held in
(continued...)

B.    Gift Tax as the Donor's Liability

As the deemed donor of QTIP, the surviving spouse bears the gift tax liability associated with the transfer of QTIP.  See sec. 2502(c).  The estate, however, points to section 2207A(b) as evidence that Congress intended that recipients of QTIP bear the ultimate gift tax liability on the transfers of QTIP.  Section 2207A(b) provides:

> SEC. 2207A(b).  Recovery With Respect to Gift Tax.--If for any calendar year tax is paid under chapter 12 with respect to any person by reason of property treated as transferred by such person under section 2519, such person shall be entitled to recover

---

[20](...continued)
the surviving spouse's  revocable trust and with stock the surviving spouse held outright.  The Commissioner argued, inter alia, that the surviving spouse should have been treated as the owner of the QTIP under sec. 2044 and, accordingly, all shares should have been aggregated and valued at a premium and not at a discount for lack of marketability.  Id. at 35.  We reasoned that nothing in sec. 2044 or the accompanying legislative history indicated that Congress intended that QTIP included in the estate of the surviving spouse upon her death under sec. 2044 should be treated as if she actually owned QTIP for purposes of aggregation.  Id. at 36, 38.  We also acknowledged the limited economic nature of the surviving spouse's ownership.  Id. at 36 ("at no time did decedent possess, control, or have any power of disposition over * * * shares in the QTIP trust").

Our reasoning in Estate of Mellinger does not apply in this case.  As we noted in Estate of Mellinger v. Commissioner, supra at 36, 38, the legislative history of the QTIP regime is silent on the issue of valuation.  In the case of transfer taxes applicable to QTIP transfers, however, Congress considered that the surviving spouse would incur gift tax liability upon a deemed transfer of QTIP during his or her lifetime.  See sec. 2207A(b).  In fact, imposing a transfer tax upon the surviving spouse's disposition of QTIP either at death or during lifetime is the main premise of the QTIP regime.

from the person receiving the property the amount by which--

> (1) the total tax for such year under chapter 12, exceeds
>
> (2) the total tax which would have been payable under such chapter for such year if the value of such property had not been taken into account for purposes of chapter 12.

See also sec. 25.2207A-1(a), Gift Tax Regs.

The estate also relies on the General Explanation of the Economic Recovery Tax Act of 1981, see Staff of Joint Comm. on Taxation, General Explanation of the Economic Recovery Tax Act of 1981 (General Explanation), at 234 (J. Comm. Print 1981), to support its argument.  The General Explanation states that Congress recognized that the burden of tax resulting from a deemed transfer under section 2519 should be "borne by the persons receiving that property and not by the spouse or the spouse's heirs."  Id.

We agree that Congress intended that as between QTIP recipients and the surviving spouse, it is the QTIP recipients who should bear the ultimate financial burden for transfer taxes. See H. Rept. 97-201, supra at 160, 1981-2 C.B. at 378.  However, we do not believe that by allocating the financial burden for gift tax to recipients of QTIP, Congress shifted to them liability for the gift tax.  Section 2207A(b) does not provide that the donees of QTIP should be liable for the applicable gift

tax.  Rather, section 2207A(b) refers to the right to recover the gift tax.  The estate's argument would read section 2207A(b) out of the gift tax architecture.  Section 2502(c) clearly provides that gift tax is the liability of the donor:  "The [gift] tax imposed by section 2501 shall be paid by the donor."  Section 25.2511-2(a), Gift Tax Regs., also provides that "the tax is a primary and personal liability of the donor, is an excise upon his act of making the transfer, is measured by the value of the property passing from the donor".  The donee is liable only if the gift tax is not paid by the donor when due.[21]  Sec. 6324(b).  It is the donor who must file a gift tax return and pay the tax on or before April 15 of the year following the year in which a gift was made.  Secs. 6019, 6075(b), 6151(a).  Any gift tax, if not paid, can be assessed against the donor within 3 years after the gift tax return is filed.  Sec. 6501.

More fundamentally, the question of how private parties allocate the burden of the tax is different from the issue of who is liable under the Code for gift tax; the donor and the donee

---

[21]If the donor fails to pay the gift tax due, sec. 6324(b) imposes a lien upon any gift made by the donor during the relevant tax year.  The lien extends for 10 years from the date the donor made the gift.  Id.  The donee is personally liable for the gift tax to the extent of the value of such gift.  Id.  The liability of the donee under sec. 6324(b) arises when the donor fails to pay the gift tax by the due date, even if the Commissioner made no deficiency determination against the donor.  Mississippi Valley Trust Co. v. Commissioner, 147 F.2d 186, 187-188 (8th Cir. 1945), affg. a Memorandum Opinion of this Court.

may shift the ultimate financial burden by agreement, for example in a net gift context, discussed below. However, such an allocation does not define or determine who has the initial responsibility for reporting and paying the tax. See <u>Diedrich v. Commissioner</u>, 457 U.S. 191, 196-197 (1982); see also <u>Lucas v. Earl</u>, 281 U.S. 111, 115 (1930).

We disagree that section 2207A(b) shifts the gift tax liability to QTIP recipients. Rather, the liability remains with the donor; and because the QTIP regime treats the surviving spouse as the deemed donor of QTIP, the liability for the gift tax attributable to a section 2519 deemed transfer remains with the surviving spouse.

C. <u>Section 2035(b) and the Gift Tax on QTIP Transfers</u>

1. <u>Section 2035(b)</u>

Section 2035(b) provides:

> SEC. 2035(b). Inclusion of Gift Tax on Gifts Made During 3 Years Before Decedent's Death.--The amount of the gross estate (determined without regard to this subsection) shall be increased by the amount of any tax paid under chapter 12 by the decedent or his estate on any gift made by the decedent or his spouse during the 3-year period ending on the date of the decedent's death.

Congress enacted section 2035(b) to eliminate the Code's incentives for deathbed transfers. H. Rept. 94-1380, at 12 (1976), 1976-3 C.B. (Vol. 3) 735, 746. Incentives for deathbed transfers existed because in general, gift tax is not taken into account in either gift tax or estate tax basis. <u>Id.</u> at 11, 1976-

3 C.B. (Vol. 3) at 745.  The transfer tax savings occur because the gift tax base excludes gift tax, but its payment diminishes the value of the donor's estate.  <u>Id.</u>  The estate tax base, on the other hand, includes the full value of the property, although a portion of the estate is used to satisfy estate taxes.  <u>Id.</u>

Congress concluded that the preference for lifetime transfers over transfers at death encouraged deathbed gifts.  <u>Id.</u> at 11-12, 1976-3 C.B. (Vol. 3) at 745-746.  It enacted section 2035(b), which effectively treats gifts in contemplation of death and transfers at death alike and reduces an incentive to make deathbed gifts.  <u>Id.</u>  The House Ways and Means Committee report states:  "the gift tax paid on transfers made within 3 years of death should in all cases be included in the decedent's gross estate.  This 'gross-up' rule would eliminate any incentive to make deathbed transfers to remove an amount equal to the gift

taxes from the transfer tax base."[22]  Id. at 12, 1976-3 C.B.
(Vol. 3) at 746.

####    2.    Payment Effected by the Donee

We have previously considered the phrase "[gift tax] paid by
the decedent or his estate" in the context of net gifts.  See
Estate of Sachs v. Commissioner, 88 T.C. 769, 777-778 (1987),
affd. in part and revd. in part on another ground 856 F.2d 1158
(8th Cir. 1988); see also Estate of Armstrong v. Commissioner,
119 T.C. 220 (2002).  A "net gift" is a gift made by a donor when
a donor makes a gift subject to the condition that the donee pay
the resulting gift tax.  See Estate of Armstrong v. United
States, 277 F.3d 490, 495 (4th Cir. 2002) (citing Rev. Rul. 75-
72, 1975-1 C.B. 310).  In such cases, for purposes of calculating

---

[22]The "Explanation of provisions" part of the House Ways and
Means Committee report uses slightly different language.  It
states:

> The amount of gift tax subject to this rule would
> include tax paid by the decedent or his estate * * *.
> It would not, however, include any gift tax paid by the
> spouse on a gift made by the decedent within 3 years of
> death which is treated as made one-half by the spouse,
> since the spouse's payment fo such tax would not reduce
> the decedent's estate at the time of death.

H. Rept. 94-1380, at 14 (1976), 1976-3 C.B. (Vol. 3) 735, 748.
As we explained in Estate of Sachs v. Commissioner, 88 T.C. 769,
778 (1987), affd. in part and revd. in part on another ground 856
F.2d 1158 (8th Cir. 1988), payment of tax on gifts does not
always remove funds from the transfer tax base, and the language
of sec. 2035(b) accommodates split gifts.  The removal of funds
from the transfer tax base occurs, however, in net gifts.  See
id.

the gift tax the donor reduces the amount of the gift by the amount of the gift tax. Id. The reason for the reduction is that because the donee incurred the obligation to pay the tax as a condition of the gift, "the donor did not have the intent to make other than a net gift." Turner v. Commissioner, 49 T.C. 356, 360-361 (1968), affd. per curiam 410 F.2d 752 (6th Cir. 1969). In other words the donor reduces the value of the gift by the amount of the tax because the donor has received consideration for a part of the gift equal to the applicable gift tax.

In Estate of Sachs v. Commissioner, supra at 770, the decedent made gifts of stock to trusts established for the benefit of his grandchildren on condition that the trustees pay the resulting gift tax. The decedent reported the gifts as net gifts. Id. Because the decedent died within 3 years of the gifts, the Commissioner included the gift tax paid by the trusts in the decedent's gross estate under section 2035(c) (current section 2035(b)).

In Estate of Sachs we held that the phrase "[gift tax] paid by the decedent or his estate" in section 2035(c) included gift tax attributable to net gifts made by a decedent during the 3-year period before his or her death, even though the donees are contractually obligated to pay the gift tax. See id. at 776-778. We stated that "Application of the literal language of section

2035(c) would dictate a result inconsistent with the architecture of the transfer tax system." Id. at 774. We reasoned that the literal application of section 2035(c) would be "wholly inconsistent with Congress' goal of sharply distinguishing deathbed gifts from other gifts and eliminating the disparity of treatment between deathbed gifts and transfers at death." Id. at 777.

The parties strongly disagree whether a deemed transfer of QTIP is a net gift or is merely reported as a net gift. Respondent argues that a deemed transfer of QTIP does not differ in any meaningful way from the net gift considered in Estate of Sachs. Mrs. Morgens and her estate in fact reported the values of the 2000 and 2001 deemed transfers, respectively, by subtracting the gift tax the trustees paid with respect to the transfers from the fair market value of the transferred property.[23] Accordingly, respondent contends that under Estate of Sachs section 2035(b) applies to the gift tax paid on the 2000 and 2001 deemed transfers. See id. at 778.

_____

[23]Under regulations promulgated after Mrs. Morgens died, the amount treated as a transfer under sec. 2519 is reduced by the amount of gift tax that the surviving spouse is entitled to recover under sec. 2207A(b). Sec. 25.2519-1(c)(4), Gift Tax Regs. Although it is not clear that the regulations apply to Mrs. Morgens' gifts, compare T.D. 9077, 2003-2 C.B. 634, with sec. 25.2519-2, Gift Tax Regs., the position taken by Mrs. Morgens appears consistent with sec. 25.2519-1(c)(4), Gift Tax Regs.

The estate opposes labeling section 2519 deemed transfers as net gifts and points to a number of differences between net gifts and section 2519 transfers. For example, the estate contends: (1) The property taxed in a net gift is the donor's property rather than property of the first spouse to die; (2) the donor provides the funds to pay the gift tax on a net gift, while funds used to pay the gift tax in a section 2519 transfer come from the estate of the first spouse to die or the transferee; and (3) the transferee's obligation to pay the gift tax on a net gift arises under other circumstances than a section 2519 transfer.

The estate's comparison, however, ignores the underlying premise of the QTIP regime that the surviving spouse is deemed to receive and then give (or pass at death) QTIP property, other than her life interest. In addition, we believe that for purposes of section 2035(b) the deemed transfer of QTIP in this case is similar to a net gift. In the case at hand, as in a net gift scenario, the trustees had a contractual obligation to indemnify Mrs. Morgens for any gift tax liability. Mrs. Morgens also had a statutory right to recover the gift tax under section 2207A(b). In the net gift scenario the donor is liable for the gift tax under section 2502(c), and in the context of QTIP the surviving spouse, the deemed donor, is also liable for the gift tax. Mrs. Morgens reported the deemed transfers by subtracting the gift tax the trustees paid from the value of the transferred

property.  Our reasoning in Estate of Sachs v. Commissioner, supra, which construed then section 2035(c) in the context of net gifts, as well as the reasoning of the Court of Appeals for the Eighth Circuit in Estate of Sachs v. Commissioner, 856 F.2d at 1163-1165, equally apply in the context of deemed transfers of QTIP.  See supra pp. 26-27.

The estate also relies on Brown v. United States, 329 F.3d 664 (9th Cir. 2003).  In Brown the husband's estate was his separate property, and the wife had no money of her own.  Id. at 667.  As part of his estate plan, the husband established an insurance trust to hold life insurance on his wife's life and gave his wife money to fund the trust.  Id.  The transfer to the trust was a taxable gift, and the couple elected to be jointly and severally liable for the gift tax.  Id.  Because the wife had no money of her own, the husband gave her checks equal to the total amount of gift tax, and the wife used the money to pay the gift tax for both of them.  Id. at 668-669.  The husband died within 3 years of his wife's payment of the gift tax, and the Commissioner contended that all of the gift tax that the wife paid was includable in the husband's gross estate under section 2035(c) because in substance the husband paid the gift tax.  Id. at 669.  The Court of Appeals for the Ninth Circuit applied the step-transaction doctrine and held that the gift tax payment was properly attributable to the husband because the wife was a "mere

conduit" of funds and the husband's payment to his wife had no purpose other than facilitating the husband's payment of the gift tax. Id. at 672.

The estate suggests that under Brown v. United States, supra, the substance of the gift controls rather than the form, and the source of funds is pertinent in a section 2035(b) analysis. The estate points out that because the wife in Brown paid the gift tax using her husband's financial resources, it was the husband's estate that was reduced and therefore the payment should be included in his gross estate under section 2035(b). The estate analogizes Brown to the QTIP situation and argues that the key consideration in a section 2035(b) analysis is the source of funds because the goal of section 2035(b) is to prevent depletion of the estate through deathbed gifts.

The estate's reliance on Brown is misplaced. While we generally agree that the source of funds used to pay the gift tax is pertinent in a section 2035(b) analysis because the purpose of section 2035(b) is to prevent depletion of the estate, see Estate of Sachs v. Commissioner, 856 F.2d at 1165, the essential premise of the QTIP regime is that the surviving spouse is deemed to pass the entire QTIP. Accordingly, the estate's argument ignores the underlying assumption of the QTIP regime that the entire QTIP is first deemed to pass to the surviving spouse and the surviving spouse, in turn, is deemed to transfer the QTIP either at his or

her death or inter vivos.  Because of such deemed ownership of QTIP and inclusion in the transfer tax base of the surviving spouse, the estate of the first spouse to die is permitted to exclude the entire QTIP from the estate tax base of the first spouse to die.  Cf. Estate of Mellinger v. Commissioner, 112 T.C. at 35.

3.    Plain Language Comparison With Section 2207A(b)

Nothing in the Code expressly excepts the gift tax liability of the surviving spouse on transfers of QTIP from the application of section 2035(b).  The estate nevertheless highlights variations in language in sections 2035(b) and 2207A(b) as support for the contention that Congress did not intend to apply section 2035(b) to gift tax paid by recipients of QTIP under section 2207A(b).  The estate argues that section 2035(b) increases the decedent's gross estate by the amount of gift tax "paid by the decedent" whereas the QTIP regime, in section 2207A, addresses the tax paid "with respect to" a person who has made a deemed transfer of QTIP.  According to the estate, tax paid "with respect to" a person is not includable under section 2035(b) because it is different from the tax paid "by the decedent or his estate".

Although there are variations in the language of sections 2035(b) and 2207A(b), those variations do not lead to a different interpretation of section 2035(b).  We do not think that when

Congress referred to gift tax "with respect to" a decedent in section 2207A(b), it intended to somehow distinguish a special type of gift tax, in contrast to gift tax "paid by the decedent". Rather, we believe that Congress used the wording it did in section 2207A(b) to reflect the reality of the QTIP regime--the deemed transfer of QTIP by the decedent and the payment of tax resulting from that deemed transfer. The gift tax structure simply does not have two categories of gift tax, namely the gift tax paid by a taxpayer and the gift tax paid with respect to a taxpayer, as the estate appears to imply. It is the donor's liability for gift tax that has always been the cornerstone of the gift tax provisions of the Code. See sec. 2502(c); see also Revenue Act of 1932, ch. 209 secs. 509, 510, 47 Stat. 249 (providing, similar to the current Code, that the gift tax shall be paid by the donor and if the tax is not paid when due, the donee shall be personally liable for such tax to the extent of the value of the gift). Accordingly, we disagree that the differences in the language in sections 2035(b) and 2207A(b) mandate a contrary result.

4. No Legislative Intent To Amend Section 2035(b)

The estate contends that when Congress enacted the QTIP regime, it silently amended section 2035(b) with respect to gift tax that arises when a surviving spouse makes a gift of QTIP. It argues that the General Explanation supports the argument that

Congress did not intend the surviving spouse or her estate to bear transfer taxes on QTIP but rather intended that the surviving spouse remain in the same economic position as if the QTIP never existed:

> Though the Congress believed that qualifying terminable interest property should be aggregated with the spouse's cumulative gifts or included in the spouse's estate to determine the amount of the transfer tax, it did not believe that the spouse or the spouse's heirs should bear the burden of this tax. Accordingly, the Congress believed it appropriate to provide an apportionment rule to <u>insure that any transfer taxes imposed on qualified terminable interest property are borne by the persons receiving that property and not by the spouse or the spouse's heirs</u>.

General Explanation, <u>supra</u> at 234 (emphasis added); see also H. Rept. 97-201, <u>supra</u> at 160, 1981-2 C.B. at 378.

Despite the estate's plea, we will not imply an amendment to section 2035(b) for the gift tax liability of the surviving spouse on transfers of QTIP because of the general rule of statutory construction that "Amendments by implication * * * are not favored." <u>United States v. Welden</u>, 377 U.S. 95, 103 n.12 (1964); see also 1A Singer & Singer, Statutes and Statutory Construction, sec. 22:13, at 292-293 (7th ed. 2009). Moreover, H. Rept. 97-201, <u>supra</u> at 160, 1981-2 C.B. at 378, which is similar to the General Explanation, does not indicate congressional intent to absolve the surviving spouse of all cascading consequences of the transfer tax liability. Rather, the House Ways and Means Committee report explains why Congress

enacted section 2207A; namely, to permit the surviving spouse to recover from QTIP recipients (1) estate taxes due as a result of inclusion of the remainder interest in the surviving spouse's estate under section 2044, see sec. 2207A(a), and (2) gift taxes due as a result of section 2519 deemed transfers, see sec. 2207A(b).

In this respect we find instructive Congress' consideration of another collateral consequence of gift tax triggered by section 2519 transfers:  if, as a result of a lifetime disposition of the qualifying income interest, the inclusion of the entire QTIP uses up some or all of the surviving spouse's unified credit, the surviving spouse may not recover the credit amount from the remaindermen.  H. Rept. 97-201, supra at 162, 1981-2 C.B. at 379.  Congress' refusal to restore the surviving spouse's unified credit undercuts the estate's argument that Congress intended to hold the donees liable for the gift tax on gifts of QTIP under section 2519.

Because Congress contemplated that the surviving spouse may bear some tax consequences of section 2519 transfers, the House Ways and Means Committee report, id. at 160, 1981-2 C.B. at 378, is not evidence of congressional intent to absolve the surviving spouse of all tax consequences of the QTIP transfers.  Without a clear congressional mandate, we shall not treat gift tax liability of the surviving spouse, for purposes of section

2035(b), any differently than any other gift tax liability of a decedent-donor that is paid by the donees with respect to gifts a decedent-donor makes within 3 years of death.

5. Other Rules of Statutory Construction

The estate argues that the QTIP regime and section 2035(b) conflict and that the QTIP regime, which is supposed to leave the surviving spouse in the same economic position as if the QTIP never existed, applies to the exclusion of section 2035(b).  The estate suggests that under the rules of statutory construction the later enacted specific provisions of section 2207A(b) control over the earlier enacted general provisions of section 2035(b). However, the statutory conflict rule of construction is properly invoked only when two statutes irreconcilably conflict and the conflict cannot be resolved by interpretation.  See 2B Singer & Singer, Statutes and Statutory Construction, sec. 51:2, at 216-218 (7th ed. 2008) ("Where two irreconcilably conflicting statutes are involved * * * the more recent of the two prevails * * *.  Where a conflict exists the more specific statute controls over the more general one.").

We reject the estate's argument because there is no irreconcilable conflict between sections 2207A(b) and 2035(b). Section 2207A(b) gives the surviving spouse a right to recover gift tax paid with respect to QTIP transfers from recipients of QTIP.  Section 2035(b), on the other hand, as it applies in this

case, increases the estate of the surviving spouse by the amount of gift tax paid by the surviving spouse or by the estate on gifts made within 3 years of death, including deemed gifts of QTIP. Accordingly, the proffered rule of statutory construction is inapplicable in this case.

In holding as we do, we are mindful of another rule of statutory construction. We must read the statutes to give effect to each if we can do so while preserving their sense and purpose. Watt v. Alaska, 451 U.S. 259, 267 (1981). Creating an exception from section 2035(b) for gift tax paid with respect to deemed transfers of QTIP, as the estate invites us to do, would frustrate the purpose of section 2035(b). The legislative history of the Tax Reform Act of 1976, Pub. L. 94-455, sec. 2001(a)(5), 90 Stat. 1848, which added section 2035(b) to the Code, guides us in this case just as it did in Estate of Sachs v. Commissioner, 88 T.C. 769 (1987).

As discussed above, see supra pp. 23-25, Congress enacted section 2035(b) to eliminate an incentive for deathbed gifts. See H. Rept. 94-1380, supra at 12, 1976-3 C.B. (Vol. 3) at 746. Because of section 2035(b), the donor's estate must include in the estate tax base the gift tax paid by the donor with respect to gifts made within 3 years of death. An exception from section 2035(b) for gift tax paid on QTIP transfers would encourage transfers of QTIP in contemplation of the surviving spouse's

death, which is inconsistent with the goal of section 2035(b).
For example, if the surviving spouse held QTIP until death, the
entire QTIP would be included in her estate tax base.  Sec. 2044.
However, as in the net gift context, if section 2035(b) did not
apply, by triggering a disposition of QTIP inter vivos, the
surviving spouse could permanently remove the gift tax due on the
transfer of QTIP from her transfer tax base.  This is
inconsistent with Congress' goal of treating alike transfers at
death and transfers in contemplation of death.  See H. Rept. 94-
1380, supra at 11-12, 1976-3 C.B. at 745-746.  Interpreting
section 2035(b) as inapplicable to gift tax paid by donees of
QTIP in satisfaction of the surviving spouse's liability would
completely undermine the purpose of section 2035(b) in the
context of QTIP because the literal reading of section 2035(b)
would allow the surviving spouse to easily circumvent the purpose
of section 2035(b).

We recognize the limited economic nature of the interest in
QTIP held by the surviving spouse.  Nevertheless, the QTIP
election that the executor of the estate of the first spouse to
die may make carries both benefits and burdens for both spouses
and their estates.  See Estate of Higgins v. Commissioner, 91
T.C. at 70.  Inclusion of the gift tax paid with respect to a
section 2519 transfer in the surviving spouse's gross estate is
one such burden if the transfer occurs within 3 years of his or

her death.  Without a clear legislative mandate to except gift tax liability of the surviving spouse on section 2519 transfers from the application of section 2035(b), we shall not infer such an exception.

We have considered the remaining arguments made by the parties, and to the extent not discussed above, we conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u> <u>Rule 155</u>.