T.C. Summary Opinion 2015-11

UNITED STATES TAX COURT

GEORGE A. RESNIK, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 30425-13S.                    Filed February 23, 2015.

<u>Ronald J. Jaicomo</u>, for petitioner.

<u>Angela J. Kennedy</u>, for respondent.

SUMMARY OPINION

MORRISON, <u>Judge</u>:  This case was heard pursuant to the provisions of

section 7463 of the Internal Revenue Code in effect when the petition was filed.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any

other court, and this opinion shall not be treated as precedent for any other case.

All subsequent section references are to the Internal Revenue Code in effect for the year in issue, 2010.

The respondent Internal Revenue Service ("IRS") issued a notice of deficiency to the petitioner, George A. Resnik, Jr., for the 2010 tax year disallowing an alimony-or-separate-maintenance deduction in the amount of $14,166, determining an income-tax deficiency of $3,972, and imposing an accuracy-related penalty under section 6662(a) of $794.40. This case arises from Resnik's timely petition. We have jurisdiction pursuant to section 6214(a).

The sole issue to be resolved is whether Resnik is entitled to an alimony-or-separate-maintenance deduction for 2010.[1] We hold that he is not.

## Background

The parties have submitted this case fully stipulated for decision under Tax Court Rule of Practice & Procedure 122(a). We adopt their amended stipulation of facts.

Resnik resided in Indiana at the time he filed the petition.

---

[1]Resnik concedes that he is liable for the penalty under sec. 6662(a) if we hold that he is not entitled to an alimony-or-separate-maintenance deduction for 2010.

Resnik and Diane Resnik married in either 1983 or 1988.[2]  They had three children during their marriage.  The Resniks' oldest child, Luke, was born on September 26, 1990.  Luke suffers from a lifelong neurological disorder that inhibits his speech and his language comprehension.

On March 6, 2007, Resnik and his wife divorced.  A "Report of Magistrate and Judgment" ("divorce instrument") dissolving the marriage was approved and ordered by the St. Joseph Circuit Court of St. Joseph County, Indiana.  This divorce instrument gave primary physical custody of the couple's children and ownership of the marital residence to Resnik's ex-wife.  Wells Fargo held a mortgage on the Resniks' marital residence.  The divorce instrument required Resnik to make, "[a]s a form of maintenance", 75% of the monthly payments for the mortgage on the marital residence, less escrow payments for real estate taxes, assessments and homeowners' insurance, until either the mortgage was paid in full or the Resniks' oldest child, Luke, no longer lived with Resnik's ex-wife on the mortgaged premises "on a permanent basis."  The divorce instrument reads in pertinent part that:

---

[2]Resnik and the IRS agreed in stipulations that Resnik and his ex-wife, Diane Resnik, married in 1988, but the Resniks' divorce instrument reads:  "The parties [i.e., Resnik and his ex-wife, Diane Resnik] were married on October 1, 1983."  This inconsistency has no effect on the conclusions reached in this opinion.

11.  As a form of maintenance under [Ind. Code Ann. Sec.] 31-15-7-2 ["Findings concerning maintenance"] Husband shall pay the sum equal to seventy-five percent (75%) of the existing real estate mortgage [on the marital residence] less escrow payments for real estate taxes, assessments and homeowners' insurance (which shall be the responsibility of Wife) first payment due with the mortgage payment due retroactively for the month of January, 2007 and for each monthly payment due thereafter until paid in full or <u>until Luke is no longer living with Wife on the mortgaged premises on a permanent basis</u>.  [Emphasis added.]

The mortgage on the marital residence was not yet fully paid during 2010. Luke lived with Resnik's ex-wife on the mortgaged premises on a permanent basis in 2010.  Thus, Resnik's obligation to make "maintenance" payments under paragraph 11 of the divorce instrument remained in effect for the entire year of 2010.  In accordance with the provisions in paragraph 11 of the divorce instrument, Resnik paid $14,166 to Wells Fargo during 2010.  The parties have stipulated that Wells Fargo received these payments on behalf of Resnik's ex-wife.

The divorce instrument does not designate the "maintenance" payments that Resnik paid to Wells Fargo as either not includible in his ex-wife's gross income under section 71 or not deductible by Resnik under section 215.  Resnik and his ex-wife were not members of the same household at any time during 2010.  Resnik would not be liable for these "maintenance" payments (or any substitute) after the death of his ex-wife.

On April 15, 2011, Resnik electronically filed a Form 1040, "U.S. Individual Income Tax Return", for the 2010 tax year. On that return Resnik deducted $14,166 for alimony or separate maintenance.

On October 16, 2012, Resnik filed a Form 1040X, "Amended U.S. Individual Income Tax Return", for the 2010 tax year. As on his original return Resnik deducted $14,166 for alimony or separate maintenance.

On September 25, 2013, the IRS issued the notice of deficiency to Resnik for the 2010 tax year.

## Discussion

Generally, the taxpayer bears the burden of proving, by a preponderance of the evidence, that the determinations in the notice of deficiency are erroneous. Tax Ct. R. Prac. & Proc. 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). In some cases the burden of proof with respect to relevant factual issues may shift to the IRS under section 7491(a). We need not decide whether the burden of proof shifts to the IRS because the relevant facts are stipulated and only a legal issue remains. See Estate of Morgens v. Commissioner, 133 T.C. 402, 409 (2009), aff'd, 678 F.3d 769 (9th Cir. 2012).

Section 215(a) provides that an individual may generally deduct "alimony or separate maintenance payments" made during the taxable year. Section 215(b)

provides that "alimony or separate maintenance payments" means any "alimony or separate maintenance payment" as defined in section 71(b) if the payment is "includible in the gross income of the recipient under section 71."

Section 71(a) provides that gross income includes "amounts received as alimony or separate maintenance payments." Section 71(b)(1) defines an "alimony or separate maintenance payment" as any payment in cash if: (1) the payment is received by, or on behalf of, a spouse[3] under a divorce or separation instrument, (2) the divorce or separation instrument does not designate the payment as not includible in gross income (of the payee spouse) under section 71 and not allowable as a deduction (to the payor spouse) under section 215, (3) the payee spouse and the payor spouse are not members of the same household at the time the payment is made, and (4) the payor spouse is not liable for any payments for any period after the death of the payee spouse. However, even if a payment meets the criteria for an "alimony or separate maintenance payment" set out in section 71(b)(1), that part of any payment that the divorce instrument fixes as a sum payable for the support of children of the payor spouse is not subject to section 71(a) and is therefore not included in the gross income of the payee

---

[3]For purposes of sec. 71, the term "spouse" includes a former spouse. Sec. 71(d).

spouse. Sec. 71(a), (c)(1). Consequently, that part of any payment that the divorce instrument fixes as payable for the support of children of the payor spouse is not deductible as alimony or separate maintenance. See secs. 71(a), (c)(1) and (2), 215(a) and (b).

Under section 71(c)(2), if any amount specified in the divorce instrument "will be reduced" on the happening of a contingency specified in the instrument that relates to a child of the payor spouse, then an amount equal to the amount that "will be reduced" is treated as fixed as a sum payable for the support of the children of the payor spouse. A contingency relates to a child of the payor spouse if the contingency depends on any event relating to that child, regardless of whether the event is certain or likely to occur. Sec. 1.71-1T(c), Q&A-17, Temporary Income Tax Regs., 49 Fed. Reg. 34456 (Aug. 31, 1984). Events that relate to a child of the payor spouse include: the child's attaining a specified age or income level, dying, marrying, leaving school, leaving the payee spouse's household, or gaining employment. Sec. 71(c)(2); sec. 1.71-1T(c), Q&A-17, Temporary Income Tax Regs., supra.

The parties agree that Resnik's "maintenance" payments during 2010 meet the criteria for alimony or separate maintenance set out in section 71(b)(1). But according to the terms of the Resniks' divorce instrument, Resnik was required to

make "maintenance" payments only until either: (1) the mortgage was paid in full or (2) the Resniks' oldest child, Luke, no longer lived with Resnik's ex-wife on the mortgaged premises on a permanent basis. Consequently, the amount of Resnik's "maintenance" payments "will be reduced" to zero in the event his oldest son, Luke, no longer lives with Resnik's ex-wife on a permanent basis. This event is a contingency relating to a child of the payor spouse. See sec. 1.71-1T(c), Q&A-17, Temporary Income Tax Regs., supra. By reason of section 71(c)(2), the amount of "maintenance" payments made by Resnik during 2010 must be treated as fixed by the divorce instrument as payable for Luke's support. Accordingly, Resnik is not entitled to an alimony-or-separate-maintenance deduction for 2010.

Resnik argues that section 71(c)(2) does not recharacterize any amount as "payable for the support of children of the payor spouse" until the relevant "contingency" has actually occurred. As of 2010, the "contingency" of Luke's moving out of the mortgaged premises had not occurred, and no reduction in the amount of "maintenance" payments required of Resnik under the divorce instrument had occurred.

Resnik's argument contradicts the plain language of section 71(c)(2). Section 71(c)(2) works a recharacterization "if any amount specified in the instrument will be reduced" upon the "contingency". (Emphasis added.) If such a

hypothetical reduction occurred, the effect of section 71(c)(2) is that "an amount equal to the amount of such reduction will be treated as an amount fixed as payable for the support of children of the payor spouse." So, for example, in Fosberg v. Commissioner, T.C. Memo. 1992-713, 64 T.C.M. (CCH) 1527, 1528 (1992), a 1985 divorce judgment required the taxpayer to pay his ex-wife the sum of $150 per week until she died or remarried or until their youngest child reached the age of 18, whichever occurred first. During 1987, before their youngest child had reached the age of 18, the taxpayer paid his ex-wife $7,800 (or $150 per week for 52 weeks). Id. Section 71(c)(2)(A) was applicable to these $150-per-week payments because the payments "will be reduced to zero when petitioner's youngest child reaches the age of 18 years". Id., 64 T.C.M. (CCH) at 1529 (emphasis added).[4]

---

[4]For other examples, see Hammond v. Commissioner, T.C. Memo. 1998-53, 75 T.C.M. (CCH) 1745, 1746-1747 (1998) (payments of $2,000 per month to ex-wife that would end on 18th birthday of child) and an illustration given in Cindy Lynn Wofford, Divorce and Separation, 515-2d Tax Mgmt. (BNA), at A-18 (Oct. 24, 2011) ("Under their separation agreement, H is to pay W $3,000 a month until W dies. The payments are to decrease by $1,000 a month when their only child, who is living with W, reaches 21 or graduates from college, whichever is later. This $1,000 reduction is a reduction on the happening of a contingency relating to a child. Therefore, only $2,000 of each $3,000 monthly payment is treated as alimony; $1,000 is child support. After the monthly payments are reduced to $2,000, the entire $2,000 payment is treated as alimony.").

Resnik concedes that he is liable for the accuracy-related penalty under section 6662(a) if he is not entitled to an alimony-or-separate-maintenance deduction for 2010. In accordance with this opinion, Resnik is liable for an accuracy-related penalty under section 6662(a) of $794.40.

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u> <u>respondent</u>.