**ESTATE OF John T. HIGGINS, Deceased; Manufacturers National Bank of Detroit, Personal Representative, Petitioner–Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

No. 89–1498.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 17, 1990.

Decided March 12, 1990.

Rehearing and Rehearing En Banc Denied April 18, 1990.

Marjory G. Basile, Miller, Canfield, Paddock and Stone, Detroit, Mich., Gregory V. DiCenso, Miller, Canfield, Paddock and Stone, Bloomfield Hills, Mich., Leonard J. Prekel (argued), Morris, Rowland, Prekel, Frederick, Lewis & Lewinski, Troy, Mich., for petitioner-appellant.

Robert L. Baker, Buck & Baker, Nashville, Tenn., Peter K. Scott, I.R.S., Washington, D.C., Gary R. Allen, Acting Chief, James H. Love (argued), David I. Pincus, U.S. Dept. of Justice, Appellate Section, Tax Div., Washington, D.C., for respondent-appellee.

Before MARTIN and WELLFORD, Circuit Judges; and EDWARDS, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

The Estate of John T. Higgins appeals the tax court's decision, 91 T.C. 61 (1988), holding that the estate failed to make an election to have the property interest transferred to Higgins's surviving spouse treated as "qualified terminable interest property" under § 2056(b)(7) of the Internal Revenue Code (1954). We affirm.

John T. Higgins died on April 29, 1982, survived by his wife, Margaretta Higgins. Higgins had been a partner in the Detroit law firm of Higgins, Starrs and MacDonell. Prior to his death, Higgins executed a will naming his former law partner, John R. Starrs, as personal representative. Paragraph 7 of the will provided the following:

> SEVENTH: Should my beloved wife, MARGARETTA C. HIGGINS, survive me by thirty days, I give and bequeath all the rest and residue of my estate unto my Trustee, hereafter named, to invest and reinvest the assets thereof, to collect the income therefrom, to pay taxes and expenses of maintenance and administration thereof and to pay the net income therefrom to or for the account of my beloved wife, MARGARETTA C. HIGGINS, in monthly or other convenient installments (but not less often than annually) during her lifetime. If, in the opinion of my Trustee, considering income available to my beloved wife from all other sources, my said beloved wife, MARGARETTA C. HIGGINS, shall, by reason of illness, accident or misfortune, stand in need of funds for medical, surgical, dental, hospital or nursing expenses, or expenses of invalidism or convalescence, my Trustee is authorized to in-

vade principal to the extent necessary to meet such need or needs. This power of invasion shall be continuous and shall not be exhausted by use.

The succeeding paragraph of the will provided that upon the death of Margaretta Higgins, the remaining trust property be paid to three qualified educational institutions.

The will was admitted to probate and Starrs was named as personal representative. Subsequently, the law firm of Higgins, Starrs and MacDonnell prepared a June 1982 version of IRS Form 706, U.S. Federal Estate Tax Return, for the estate. The return was filed on January 28, 1983, and was signed by Starrs, as personal representative, and by Robert MacDonell, as preparer.

Question 12 on the return form stated "Do you elect to claim a marital deduction for an otherwise nondeductible interest under section 2056(b)(7)?" Next to that question were two boxes designated for either a "YES" or "NO" response. The estate entered a typewritten "X" in the box marked "NO".

Attached to the return were Schedules M, Bequests, etc., to Surviving Spouse, and O, Charitable, Public, and Similar Gifts and Bequests. Schedule M, used to claim the marital deduction, showed that property passed to Margaretta Higgins in the amount of $345,256.95, $130,113.02 attributable to her interest as surviving joint tenant and $215,143.93 attributable to her life income interest in the residual trust established under paragraph seven of Higgins's will. The estate did not designate any of the property listed on Schedule M as qualified terminable interest property. Schedule O, used for deductions for charitable bequests, showed three educational institutions receiving the net amount of $390,411.16, $60,000 in cash and $330,-411.16 attributable to the trust remainder established under paragraph eight of the will.

In a statutory notice of deficiency dated January 27, 1986, the Commissioner disallowed $215,143.93 of the claimed marital deduction because the life income interest passing to Margaretta Higgins was a generally nondeductible terminable interest because it would terminate or fail upon her death, and because the estate had not established that an election was made to treat any portion of the property passing to Margaretta Higgins as qualified terminable interest property.

The estate filed a timely petition for redetermination of the deficiency in the tax court, arguing that despite its negative answer to the qualified terminable interest question 12 on its return, that its return as a whole, particularly Schedules M and O, showed an intention to make the qualified terminable interest election. The tax court rejected the estate's argument, finding that the statute requires a clear manifestation of an election and that there was no evidence in the estate's return that an election had been made.

■ We review *de novo* the legal standard applied by the tax court in determining whether the estate made a valid qualified terminable interest election. *Rose v. Commissioner*, 868 F.2d 851, 853 (6th Cir. 1989). The factual findings of the tax court shall not be overturned unless clearly erroneous. *Id.*

■ Prior to 1982, estate tax law denied a marital deduction for "terminable interest" property. Internal Revenue Code § 2056(b) (as then in effect). A terminable interest is generally one that will terminate or fail either upon the lapse of time or upon the occurrence of an event or contingency. Internal Revenue Code § 2056(b)(1). Thus, before 1982, an estate could not claim the estate tax marital deduction with respect to property in which the surviving spouse was given a life estate.

The Economic Recovery Tax Act of 1981, Pub.L. No. 97–34, 95 Stat. 172, made significant changes in the estate and gift tax laws for 1982 and succeeding years, including modifying the terminable interest rule. Specifically, § 2056(b)(7) was added to the Internal Revenue Code to allow property that is otherwise nondeductible under the terminable interest rule to qualify for the estate tax marital deduction if it is "quali-

fied terminable interest property." Qualified terminable interest property is defined as property in which a deceased spouse passes to the surviving spouse a "qualified income interest for life." The surviving spouse has a qualifying income interest for life if the surviving spouse is entitled to all of the income for life and if, during the surviving spouse's lifetime, no one has a power to appoint any part of the property to any person other than the surviving spouse. Internal Revenue Code § 2056(b)(7)(B)(ii). The entire property, the life interest as well as the remainder, is treated as passing to the surviving spouse and, therefore, the entire property qualifies for the marital deduction. This treatment also applies in the case of a bequest which is split between a life interest in the spouse and a remainder interest which goes to charity.

In order to obtain qualified interest treatment, however, an election must be made; otherwise the general terminable interest rule applies. Section 2056(b)(7)(B)(v) states:

> An election under this paragraph with respect to any property shall be made by the executor on the return of tax imposed by section 2001. Such an election, once made, shall be irrevocable.

Thus, the plain language of the election provision of the statute requires the executor to indicate its election of qualified terminable treatment on the estate tax return itself.

■ The June 1982 version of the estate tax return was the first to include the qualified terminable interest election. As we discussed earlier, the qualified terminable interest election question read "Do you elect to claim a marital deduction for an otherwise nondeductible interest under § 2056(b)(7)?" The estate answered "no" to this question, but claims that the question, along with the instructions in the return, are confusing. In addition, the estate contends that § 2056(b)(7) and the corresponding temporary regulations did not clarify the necessity of making an unequivocal election. Relying on these claims and the fact that the qualified terminable interest election was brand new in 1982, the estate concludes that it substantially complied with the election procedure in a way that should have made it apparent to the Commissioner that it intended to treat all, or at least part, of the interest transferred to Margaretta Higgins as a qualified terminable interest.

We find the estate's argument to be without merit. We do not believe that the wording of the election question was confusing. Even if the question had been poorly worded, however, the instructions accompanying the estate tax return adequately explained the effect of the election and the procedure for making it. The instructions stated that in order to make the election, the election question must be answered by checking the "YES" block and, if the total gross estate is greater than $500,000 (as is the gross estate of Higgins), the property for which this election is made must be included in Schedule M and clearly marked as "qualified terminable interest property." Not only did the estate answer the election question negatively, but nowhere on Schedule M was the life income interest passing to Margaretta Higgins identified as a qualified terminable interest. In fact, there is no reference anywhere in the estate's return to a qualified terminable interest election or to § 2056(b)(7).

■ We agree with the tax court that § 2056(b)(7) requires a clear manifestation of an affirmative intent to elect qualified terminable interest treatment. *See Atlantic Veneer Corp. v. Commissioner*, 85 T.C. 1075, 1082–83 (1985). The effect of a qualified terminable interest election is not confined solely to the marital deduction received by the electing estate. If an election is made, the underlying trust property is included in the estate of the surviving spouse. Internal Revenue Code § 2044. Thus, the potential tax liabilities of both spouses' estates are considered by the executor in determining whether to make the election. Depending upon the situation, it may or may not be advantageous to elect qualified terminable interest treatment.

The intent of § 2056(b)(7) is that the election must be unequivocally communicated

on the estate tax return of the spouse who dies first, thereby binding the estate to the tax treatment determined by the executor to be the most beneficial. *See Young v. Commissioner,* 783 F.2d 1201, 1206 (5th Cir.1986), *aff'g,* 83 T.C. 831 (1984). The section was not enacted to allow the taxpayer to take a "wait and see" approach. As in the case of other elective provisions, the policy of the section "is furthered by requiring a clear manifestation to the government of taxpayer's election"; any other rule "would leave room for the taxpayer to argue later that it had never intended to make an election...." *Knight–Ridder Newspapers, Inc. v. United States,* 743 F.2d 781, 795 (11th Cir.1984).

Like the tax court, we find no evidence of an election in the estate's tax return. In fact, all the relevant evidence is directly to the contrary. Accordingly, we affirm the tax court's holding that the estate did not make a valid § 2056(b)(7) election.