# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ESTATE OF ANNE W. MORGENS,
DECEASED, James H. Morgens,
Executor,
　　　　*Petitioner-Appellant,*

v.

COMMISSIONER OF INTERNAL
REVENUE,
　　　　*Respondent-Appellee.*

No. 10-73698

Tax Ct. No.
26212-06

OPINION

Appeal from a Decision of the
United States Tax Court

Argued and Submitted
December 8, 2011—San Francisco, California

Filed May 3, 2012

Before: Marsha S. Berzon and Carlos T. Bea, Circuit Judges,
and Lloyd D. George, Senior District Judge.*

Opinion by Judge Bea

*The Honorable Lloyd D. George, Senior District Judge for the U.S.
District Court for Nevada, sitting by designation.

## COUNSEL

John W. Porter, Keri D. Brown, and Jeffrey D. Watters, Jr., Baker Botts L.L.P., Houston, Texas, for the petitioner-appellant.

Gilbert S. Rothenberg, Acting Deputy Assistant Attorney General, Jonathan S. Cohen, and Bethany B. Hauser, Washington, District of Columbia, for the respondent-appellee.

## OPINION

BEA, Circuit Judge:

The Estate of Anne W. Morgens ("the Estate") appeals the United States Tax Court's decision that it owed additional estate taxes. This case presents the question whether gift taxes paid by the donee trustees of a Qualifying Terminable Interest in Property (QTIP) trust, based on a 26 U.S.C. § 2519[1] deemed *inter vivos* transfer of the QTIP property within three years of the donor's death, must be included in the transferor's gross estate under the so-called "gross-up rule" of § 2035(b). We hold that it does. We have jurisdiction under § 7482, and we affirm.

## I.   Statutory Background

This case turns on two statutory schemes within the Internal Revenue Code. The first is § 2035(b), the "gross-up rule," which requires that a gross estate be increased by the amount of gift taxes paid by the decedent or her estate within three years of her death. Section 2035 states, in relevant part:

> § 2035. Adjustments for certain gifts made within 3 years of decedent's death.
>
> . . .
>
> (b) Inclusion of gift tax on gifts made during 3 years before decedent's death
>
> The amount of the gross estate (determined without regard to this subsection) shall be increased by the amount of any tax *paid under chapter 12 by the decedent or his estate* on any gift made by the dece-

___

[1]All subsequent Code citations are to 26 U.S.C. unless indicated otherwise.

dent or his spouse during the 3-year period ending on the date of the decedent's death.

(emphasis added). We have explained before the purpose and structure of the gross-up rule of § 2035(b).

Section 2035[(b)] is designed to recoup any advantage gained by so-called "death-bed" transfers in which a taxpayer, cognizant of impending mortality, transfers property out of her estate in order to reduce estate tax liability. Although these inter vivos transfers incur gift tax liability, opting to transfer assets prior to death still carries a tax advantage. Gift tax is calculated using a tax exclusive method (the applicable rate is applied to the net gift, exclusive of gift taxes), whereas estate taxes are calculated on a tax inclusive method (the applicable rate is applied to the gross estate, before taxes are deducted). Section 2035[(b)] presumes that gifts made within three years of death are made with tax-avoidance motives and eliminates the tax advantage for those death bed transactions.

*Brown v. United States*, 329 F.3d 664, 667-68 (9th Cir. 2003) (citations omitted).

The second statutory scheme in this case is the QTIP regime. The QTIP is an exception to an exception to an exception. In general, a tax is levied on the transfer of estates. § 2001. However, the marital deduction is an exception to this rule, and any interest in property which passes to a surviving spouse is not considered part of the decedent's gross estate. § 2056(a). Life estates and other terminable interests are an exception to the marital deduction. § 2056(b)(1). Finally, the QTIP regime is an exception to the terminable interest exception to the marital deduction. A QTIP is a terminable interest in property which has certain limiting characteristics: (1) the surviving spouse receives all of the income from the property

for life, distributed at least annually (a "qualifying income interest"); (2) no person can appoint any part of the property to any person other than the surviving spouse; and (3) the decedent's estate elects to treat the interest as a QTIP. § 2056(b)(7)(B). If an interest is a QTIP, the regime establishes a legal fiction: for the purposes of estate taxes, the entire property is treated as if it passed to the surviving spouse (and, consequently, nothing to the remaindermen)—even though the surviving spouse actually possesses only the income interest. § 2056(b)(7)(A). Therefore, the marital deduction of § 2056(a) applies to the entire QTIP property and the property is not included in the gross estate of the decedent.

The underlying premise of the QTIP regime is that the surviving spouse is deemed to receive and then give the entire QTIP property, rather than just the income interest. The purpose of the QTIP regime is to treat the two spouses as a single economic unit with respect to the QTIP property while still allowing the first-to-die spouse to control the eventual disposition of the property.

When all or part of the QTIP's qualifying income interest is transferred—by death of the surviving spouse (§ 2044) or by *inter vivos* transfer (§ 2519)—such a transfer is deemed to transfer the *entire* QTIP property, except the qualifying income interest, which is an ordinary transfer under § 2511.

In the context of gift taxes or estate taxes, the donor is responsible for paying the tax. § 2502. In the context of a QTIP deemed transfer, the donor (the surviving spouse) by definition does not possess the remainder interest in the QTIP property; the donor possesses only the qualifying income interest. Therefore, § 2207A gives the donor the right to recover the tax from the QTIP beneficiaries who receive the QTIP property transfer.

## II.   Facts and Procedural History

Anne Morgens, the decedent in this case, married Howard Morgens when she was 26 and remained married to him until his death in January 2000. In 1991, when Mrs. Morgens was 81, she and Mr. Morgens entered into the Morgens Family Living Trust Agreement. Under that agreement, Mr. and Mrs. Morgens each contributed assets to a Living Trust.

At Mr. Morgens' death, the one-half of the community property in the Living Trust attributable to Mrs. Morgens was allocated to a Survivor's Trust, and the remaining one-half was allocated to a Residual Trust. After certain specific gifts, the remainder of the Residual Trust was held in trust for Mrs. Morgens' benefit. She had the right to income for life from the Residual Trust. The Living Trust Agreement provided that, upon Mrs. Morgens' death, the remainder of the Residual Trust was to be divided into shares for the Morgens' children and grandchildren.

In October 2000, Mr. Morgens' estate tax return was filed. On its estate tax return, Mr. Morgens' estate satisfied the criteria for and elected QTIP treatment for the property passing to the Residual Trust. *See* § 2056(b)(7). The Residual Trust therefore qualified for the marital deduction for federal estate tax purposes; its value was not taxed in Mr. Morgens' estate.

Shortly thereafter, the Residual Trust was divided into two trusts, Residual Trust A, worth approximately $8.3 million, and Residual Trust B, worth over $28 million. Mrs. Morgens maintained a right to the income from both Residual Trusts, paid at least annually. This division was not a taxable event.

However, on December 8, 2000, Mrs. Morgens relinquished her lifetime interest in the income from Residual Trust A. The income interest vested in the trust beneficiaries, Mrs. Morgens' sons. Because Mr. Morgens' estate had

elected QTIP treatment for the Residual Trust, Mrs. Morgens' gift of her lifetime income interest in Residual Trust A triggered a gift tax on the deemed transfer of the remainder interest in the trust to the remainder beneficiaries: the Morgens' children and grandchildren. The gross value of the property "treated as . . . transfer[red]" under § 2519(a)—*i.e.*, the accelerated remainder interest in Residual Trust A—was computed as $6,398,901. Mrs. Morgens filed a gift tax return with respect to this transaction, reporting a net taxable gift of $4,111,592. The remainder of the gross transfer, $2,287,309, was paid to the Internal Revenue Service as gift tax by the trustees of Trust A (Mrs. Morgens' sons).

On January 10, 2001, Mrs. Morgens relinquished her lifetime interest in the income from Residual Trust B. Like the disposition of her interest in Residual Trust A, this gift of Mrs. Morgens' interest in the trust was subject to tax as a transfer of the remainder interests in the trust to the remainder beneficiaries. §§ 2519(a), (b)(1). The gross value of the transferred accelerated remainder interest in Residual Trust B was computed as $21,676,289. Mrs. Morgens filed a gift tax return with respect to this transaction, reporting a net gift of $13,983,787. The remainder of the gross transfer, $7,692,502, was paid as gift tax by the trustees of Trust B (again, Mrs. Morgens' sons).[2]

Mrs. Morgens died on August 25, 2002, within three years of both her 2000 and 2001 transfers of her lifetime income interests in each of the trusts. Her estate tax return was timely filed (on extension) on November 24, 2003. Under the "gross-up rule," a decedent's gross estate includes all gift taxes paid by the decedent within three years of her death. § 2035(b). However, the return filed by the Estate did not include, as part of the gross estate, the gift taxes shown as paid on Mrs. Morgens' 2000 and 2001 gift tax returns. The Commissioner

---

[2]These amounts were later revised to $21,623,964, $13,937,756, and $7,686,208, respectively.

determined a deficiency based on the failure to include the gift tax in the gross estate, and issued a notice of deficiency accordingly. The Estate petitioned the Tax Court for a redetermination.

Before the Tax Court, the Estate argued that the trustees paid the gift tax on the § 2519 deemed transfers, and that Congressional intent in enacting the QTIP regime was to shift both the primary and the ultimate liability for the transfer taxes from the QTIP donor to the donees. The Commissioner argued that the transfer taxes were paid indirectly by Mrs. Morgens for the purposes of § 2035(b), and that therefore the taxes must be included in the gross estate. The Tax Court held that the gift taxes paid pursuant to the QTIP rules on the gift of QTIP property were includible in Mrs. Morgens' estate under § 2035(b). The Estate appealed.

### III. Analysis

This court reviews *de novo* the Tax Court's conclusions of law, including its construction of the Internal Revenue Code. *Biehl v. Comm'r*, 351 F.3d 982, 985 (9th Cir. 2003).

**[1]** For § 2035(b) to apply to gift taxes paid on § 2519 "deemed" transfers, those taxes must be paid "by the decedent"—that is, by Mrs. Morgens—under the language of § 2035(b). We conclude that they were.

**[2]** One possible reading of § 2035(b) suggests, at first, the opposite conclusion. Gift taxes are included in the estate under § 2035(b) only if they are "paid . . . by the decedent." If taxes are "paid by" the person who sent the check, our analysis would be simple. The Joint Stipulation of Facts, to which the parties agreed, states that "the trustees of [the] Residual Trust[s] paid the . . . gift tax" due on the § 2519 deemed transfers. Thus under this reading of § 2035(b), as the trustees paid the gift tax, then the gift tax could not have been paid by the decedent. But we are foreclosed from this analysis by *Died-*

*rich v. Comm'r*, 457 U.S. 191 (1982) and by our own prior opinion in *Brown v. United States*, 329 F.3d 664 (2003). Instead, we turn for guidance to the analogous situation of the "net gift."

[3] A "net gift" is an arrangement where "the donor [makes] the gift subject to the condition that the donee pay the resulting gift tax.[3] *Diedrich*, 457 U.S. at 196-97. For the purposes of calculating the gift tax, the value of the gift is determined by reducing the total amount transferred by the amount of gift taxes owed. The gift tax is due only on the gift, rather than on the gross value of the property transferred. This is because the property is transferred with the intent and requirement that the donee pay the gift tax obligation incurred by the donor. Accordingly, only that portion of the amount transferred that is net of the gift tax is actually intended as a gift by the donor. *Turner v. Comm'r*, 49 T.C. 356, 360-61 (1968), *aff'd per curiam*, 410 F.2d 752 (6th Cir. 1969).

[4] "When a gift is made, the gift tax liability falls on the donor . . . When a donor makes a gift to a donee, a 'debt' to the United States for the amount of the gift tax is incurred by the donor. Those taxes are as much the legal obligation of the donor as the donor's income taxes . . ." *Diedrich*, 457 U.S. at 197. The payment of the gift taxes by the donee is taxable income to the donor (to the extent the gift taxes paid exceed the donor's adjusted basis in the property). *Id.* at 200-01.

The Eighth Circuit considered the interaction of net gifts with § 2035(b)[4] in *Estate of Sachs v. Comm'r*, 856 F.2d 1158

---

[3]After the events in this case, the Commissioner promulgated a regulation confirming that QTIP transfers are normally taxed as net gifts. *See* 26 C.F.R. § 25.2519-1(c)(4). Although that regulation did not apply to this case, both parties agree that the QTIP transfer was properly taxed as a net gift.

[4]At the time *Sachs* was decided, § 2035(b) was codified as § 2035(c). For ease of reading, the statutory section will be listed as 2035(b) throughout this opinion.

(8th Cir. 1988). In that case, in 1978 Sachs and his wife gave $2,399,044 of stock to three irrevocable trusts established for their grandchildren. *Id.* at 1159. The donation was designed as a net gift; the trust instrument required as a condition of the gift that the trustees satisfy all gift-tax liability. *Id.* Accordingly, the donee trusts paid a gift tax of $612,700, while Sachs and his wife reported the gift at a value of $1,786,340. *Id.* Sachs died within three years of having made the gifts to the trusts. *Id.* The estate recognized the value of the gift as part of the estate under § 2035(a), which requires that the gross estate be increased by the value of gifts made within three years of death. *Id.* However, the estate did not include the value of the gift tax paid as part of the estate.[5] *Id.* The Commissioner took the position that the $612,700 gift tax paid by the donee trusts should be included in the estate, and the Tax Court agreed. *Id.* at 1159-60.

In a parallel argument to that of Mrs. Morgens' estate before us, Sachs' estate argued to the Eighth Circuit that "the donee's payment of the gift tax on the . . . gift should not be included in the gross estate under § 2035(b), on the ground that this was not 'a tax paid . . . by decedent or his estate.' " *Id.* at 1163. The Eighth Circuit rejected this argument because "the distinction between tax payments made by donees of net gifts and tax payments made directly by decedent-donors . . . has little force after *Diedrich*." *Id.*

**[5]** The Eighth Circuit thus applied a substance-over-form analysis to conclude that "the fact that the Internal Revenue Service received the payment for the decedent's gift-tax liability *via* the donee does not make it any less a 'tax paid . . .

---

[5]Initially, the estate included the gift tax paid as *income* to the estate under *Diedrich*. *Sachs*, 856 F.2d at 1159. However, the Tax Reform Act of 1984, Pub. L. 98-390, § 1026(a) forgave income tax due on gift taxes on property transfers made before March 4, 1981. *Id.* Therefore, the estate received a full refund of the income tax it had paid on the gift taxes paid by the donee trusts. *Id.*

by the decedent or his estate' within the meaning of § 2035(b)." *Id.* at 1164. In a net gift, "the payment of the gift tax is (or can be) made with funds from the donor's gift, and pursuant to the donor's condition. The donee's payment of the gift tax under these circumstances is not an independent act of gratitude or reciprocity," as it was not in *Diedrich*. *Id.* Thus, "the donor of a net gift uses the donee as a conduit for the payment of the tax liability, and as donor of a net gift, he may be deemed to have paid the tax by ordering the donee to pay it over." *Id.* (citation and quotation marks omitted). Gift taxes paid by the donee of a net gift must be included in the donor's taxable income under *Diedrich*; similarly, gift taxes paid by the donee of a gift made within three years of the donor's death must be included within the donor's gross estate under § 2035(b). *Id.* at 1164.

The Eighth Circuit also noted the purpose of § 2035(b)—to prevent deathbed transfers from decreasing the taxable estate —and stated that because "[t]he assets which were used to pay the gift tax would have been part of the gross estate if the gift had never been made . . . the entire amount of the gift tax [is] properly included [in the estate] under § 2035(b)." *Id.* at 1165. Thus, that court concluded that gift tax paid by a donee under a net gift arrangement—where the donee was obligated to pay the gift tax—was nonetheless paid by the decedent for the purposes of § 2035(b)'s gross-up rule.

**[6]** We have applied similar reasoning about a conduit of funds in *Brown v. United States*, holding that when a husband gave his wife money to pay gift taxes on an insurance trust and the husband died within three years, the taxes were "paid by" the husband within the meaning of § 2035(b) and thus includible in the husband's estate. 329 F.3d at 674. We stated that "had [the wife] truly paid the gift tax from her own funds, § 2035 would not apply to Betty's payments of the gift tax." *Id.* The source of the funds mattered, we held, because "§ 2035(b) was designed to reverse the effect of funds trans- ferred out of an estate within three years of death." *Id.* The

husband's transfer of funds to his wife for payment of the gift tax reduced his estate, and thus his estate would "escape estate tax liability on the funds if he outlives the three-year reach of § 2035(b). Accordingly, it is his estate that must reverse the effect of the transfer if he dies within the three-year period." *Id.*

**[7]** We find the net gift analogy persuasive. As in a net gift, the financial responsibility for the gift taxes on a QTIP transfer rests on the donees rather than the donor, even though the shift occurs by contract in a net gift and by the operation of § 2207A in a QTIP transfer.[6] However, as in a net gift, the liability for the gift taxes remains with the donor. *Diedrich*, 457 U.S. at 197.

**[8]** We find unpersuasive the Estate's argument that § 2207A evinces Congressional intent to shift not only the ultimate financial responsibility for QTIP transfers, but also the initial tax liability for the gift tax. This argument is foreclosed both by the language of § 2207A and by the reasoning of *Diedrich*. Section 2207A states that if "tax is paid . . . with respect to any person by reason of property treated as transferred by such person under section 2519, such person shall be entitled to recover from the person receiving the property the amount [of tax paid]." The section does not state that tax *liability* is transferred, merely that the donor, who is liable for the tax, may recover the amount of the tax paid from the beneficiary of the deemed transfer. This is because the donor is treated as owning the QTIP property but, pursuant to the terms of the trust, does not fully control it, and thus cannot

---

[6]We take no position here on whether § 2207A provides a right of recovery for the additional estate taxes owed due to the inclusion of the gift taxes on the § 2519 deemed transfer in the gross estate under § 2035(b).

We note that here, in addition to the statutory right of recovery provided by § 2207A, the QTIP gifts here were made pursuant to indemnification agreements which provided a contractual right of recovery, as in a net gift.

use part of it to pay gift taxes. Absent explicit statutory revision, the liability is the donor's no matter the transfer of the final economic responsibility. As the Supreme Court stated in *Diedrich*: "When a gift is made, the gift tax liability falls on the donor . . . When a donor makes a gift to a donee, a 'debt' to the United States for the amount of the gift tax is incurred by the donor. Those taxes are as much the legal obligation of the donor as the donor's income taxes." 457 U.S. 196-97. Whether the ability to recover funds is statutory or contractual makes no difference as to whether the original tax liability *Diedrich*'s "debt to the United States"—shifts from the donor to a different party.

**[9]** As in a net gift, the QTIP trustees here paid the taxes on the § 2519 deemed transfers of the QTIP trusts. But in so doing, the trustees satisfied the tax liability incurred by Mrs. Morgens in making the transfer. *See Diedrich*, 457 U.S. at 197. Thus, under the logic of *Diedrich*, as elucidated by *Sachs* and *Brown*, the trustees acted as a conduit of funds for Mrs. Morgens, who actually paid the gift tax for the purposes of § 2035(b).

This conclusion is supported by the source-of-funds logic of *Brown*. Had Mrs. Morgens not made the deemed transfers under § 2519, the entire value of the trusts—income and remainder—would have been included in her estate under § 2044.[7] Therefore, our conclusion that the gift taxes were paid by Mrs. Morgens for the purposes of § 2035(b) is consistent with *Brown*.

---

[7]The estate also argues that the analogy to a net gift is inapposite because the property taxed was originally Mr. Morgens' property rather than Mrs. Morgens'. This argument ignores the underlying premise of the QTIP regime, that the entire QTIP property, rather than just the income interest, is deemed to pass to, and then from, the surviving spouse. Thus, the two spouses are treated as a single economic unit with respect to the QTIP property while still allowing the first-to-die spouse to control the eventual disposition of the property. The Estate cannot first use that favorable tax deferral (the § 2056 marital deduction) and then claim that the property never actually passed to Mrs. Morgens.

**[10]** Thus, we hold Mrs. Morgens paid the gift tax on the § 2519 deemed transfers of the Residual Trusts and that her estate should be increased under the gross-up rule of § 2035(b) by the value of the gift taxes paid.

**AFFIRMED.**