# United States Tax Court

T.C. Memo. 2025-47

ESTATE OF MARTIN W. GRIFFIN, DECEASED, CHRISTOPHER
GRIFFIN, EXECUTOR,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 15938-23.                              Filed May 19, 2025.

————

*Joseph Patrick Mellen*, for petitioner.

*Kathryn E. Kelly*, *David L. Wisdom*, and *Gary R. Shuler*, for respondent.

MEMORANDUM OPINION

NEGA, *Judge*: Before this Court are respondent's Motion for Partial Summary Judgment, filed on October 7, 2024 (respondent's Motion), and the estate's Motion for Partial Summary Judgment, filed on October 4, 2024 (estate's Motion). Each party has filed a Response to the other's respective Motion for Partial Summary Judgment, opposing the relief sought therein. The issues for decision are whether two bequests are includible in Martin W. Griffin's estate.

For reasons set forth below, we will grant respondent's Motion in part, deny respondent's Motion in part, grant the estate's Motion in part, and deny the estate's Motion in part.

*Background*

The following facts are derived from the pleadings and the parties' filings; these facts are stated solely for the purpose of deciding respondent's Motion and the estate's Motion and not as findings of fact

**Served 05/19/25**

**[\*2]** in this case.  *See Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994).

Martin W. Griffin (decedent) died on July 9, 2019.  He was survived by his spouse, Maria C. Creel.

Decedent had created a revocable trust known as the Martin W. Griffin Trust (Revocable Trust) on March 8, 2012.  On July 30, 2018, he executed a Second Amendment[1] to the Revocable Trust agreement.

Also on July 30, 2018, decedent had created the MCC Irrevocable Trust - 2018 (MCC Trust).  The Second Amendment to the Revocable Trust agreement directed the trustee of the Revocable Trust to make distributions as follows:

a. The Trust shall distribute the sum of Two Million Dollars ($2,000,000.00) to the Trustee then serving as the Trustee of the [MCC Trust] (as the trust may be amended), to be held for the benefit of Maria C. Creel. From this bequest, the Trustee of the [MCC Trust] shall pay to Maria C. Creel a monthly distribution, as determined by Maria and Trustee to be a reasonable amount, not to exceed $9,000.00 (such $9,000.00 to be adjusted, from the initial funding date, by a factor for the Consumer Price Index, as reasonably determined by the Trustee, in his sole discretion).

b. In addition to sub-part (a) above, the Trustee shall distribute the sum of $300,000.00 to the Trustee then serving as the Trustee of the [MCC Trust] (as the Trust may be amended), to be held as a living expense reserve for Maria [C.] Creel, to be distributed to her in the amount of $60,000.00 per year ($5,000.00 monthly) (plus earnings on such amount as determined by Trustee), for up to 60 months from the time of the initial funding of this Bequest.  Any undistributed amounts of this Bequest upon Maria C. Creel's death shall be paid to her estate.

The MCC Trust is "irrevocable, and no person shall have any right or power to amend, modify, or revoke [the MCC Trust] or any of its terms

---

[1] He also executed a First Amendment to the trust agreement on July 30, 2018.

**[*3]** or provisions, other than amendments by the Trust Advisor." The MCC Trust agreement contains provisions governing the terms of contributions:

> 3.1 <u>Contributions to Trust; Withdrawal of Contributions.</u> During the term of the trust, the Beneficiary shall have the right to make withdrawals with respect to Contributions made to the trust in accordance with the following:
>
> A. <u>Terms of Contributions.</u> Any Donor to the Trust may specify, in detail, whether the Beneficiary shall have any right to withdraw any of such Donor's Contribution to the trust and the exact terms, conditions and timing of such withdrawal rights. The Donor may specify such Terms regarding withdrawal rights in any manner reasonably acceptable to the Trustee, including by way of Grantor's Will, Trust or other estate planning document or memorandum.

And the MCC Trust agreement has mandatory terms about the distribution of trust assets:

> 3.2. <u>Administration of Trust Estate for Beneficiary</u>. The Trust Estate held for the Beneficiary shall be administered and distributed on the following terms:
>
> B. <u>Death of Beneficiary</u>. Upon the death of the Beneficiary, the Trustee shall distribute the property then remaining in the Trust Estate, or any part thereof, to or for the benefit of such one or more members of a class of persons consisting of the Beneficiary's Descendants, in such proportions and in such manner, including in further trust, as the Beneficiary may appoint to receive the same by a Will or a Codicil which specifically refers to this power of appointment and expresses the intention to exercise it. In no event shall the Beneficiary appoint any part of the Trust Estate to the Beneficiary, to the Beneficiary's estate, (emphasis added) to the Beneficiary's creditors, or to the creditors of the Beneficiary's estate. If and to the extent that the Beneficiary dies without having fully exercised such power of appointment, the Trustee shall distribute any unappointed property of the Trust Estate to the Beneficiary's then living Descendants, or a trust

**[\*4]** established for the benefit of such Descendants. If there are no Descendants of the Beneficiary then living, the Trustee shall distribute such property of the Trust Estate to Grantor's descendants.

Decedent resided in Kentucky when he died. Christopher Griffin is the executor of decedent's estate, and he lived in Kentucky when the Petition was filed.

On or about October 1, 2020, a Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return, was timely filed on the estate's behalf. Schedule M, Bequests, etc., to Surviving Spouse, attached to the Form 706 did not list any property from the estate as Qualified Terminal Interest Property (QTIP). The Schedule M, in the section for "All other property" (i.e., all non-QTIP), listed a specific bequest of $2.3 million to Ms. Creel.

On June 27, 2023, respondent sent a Notice of Deficiency to the estate. In the Notice of Deficiency respondent determined the $2 million and $300,000 bequests were includible in decedent's estate, an estate tax deficiency of $1,047,398 was due, and a section 6662[2] accuracy-related penalty of $184,000 applied.

*Discussion*

I.  *Summary Judgment Standard*

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. *Fla. Peach Corp. v. Commissioner*, 90 T.C. 678, 681 (1988). The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp.*, 98 T.C. at 520. In deciding whether to grant summary judgment, we construe factual materials and inferences drawn from them in the light most favorable to the adverse party. *Sundstrand Corp.*, 98 T.C. at 520. The parties agree that summary judgment is appropriate here for the two bequests.

---

[2] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure.

**[*5]** II.    *Estate Tax Regime*

Upon the death of a citizen or resident of the United States, section 2001(a) imposes a tax on the taxable estate transferred to the decedent's heirs.

A.    *The Marital Deduction*

In computing the amount of the taxable estate, the value of property passing from the decedent to his or her surviving spouse is generally deductible. *See* § 2056(a), (b)(7); Treas. Reg. § 20.2056(a)-1(a). The policy behind the marital deduction is that property passes untaxed from the first spouse to die to the surviving spouse but is then included in the estate of the surviving spouse. *See Estate of Letts v. Commissioner*, 109 T.C. 290, 295 (1997), *aff'd*, 212 F.3d 600 (11th Cir. 2000) (unpublished table decision). The marital deduction does not eliminate or reduce the tax on the transfer of marital assets out of the marital unit, but instead permits deferral until the death of or gift by the surviving spouse. *See Estate of Morgens v. Commissioner*, 133 T.C. 402, 410 (2009), *aff'd*, 678 F.3d 769 (9th Cir. 2012).

Ordinarily a marital deduction is not allowed for a terminable interest property passing from the decedent to the surviving spouse (terminable interest rule). *See* § 2056(b). A terminable interest is an interest passing from the decedent to the surviving spouse that will end on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur. *See* § 2056(b)(1). The terminable interest rule denies a marital deduction if (1) an interest passing to the surviving spouse is a terminable interest, (2) an interest in such property passes from the decedent to someone other than the surviving spouse for less than full and adequate consideration in money or money's worth, and (3) a third person will possess or enjoy the property after the termination or failure of the interest passing to the surviving spouse. *See id.* The purpose of the terminable interest rule is to deny the marital deduction for transfers between spouses if the transfer has been structured to avoid estate tax when the surviving spouse dies. *See Estate of Morgens*, 133 T.C. at 410; *Estate of Novotny v. Commissioner*, 93 T.C. 12, 16 (1989).

B.    *QTIP Regime*

Section 2056(b)(7) provides an exception to the terminable interest rule for QTIP. *See Estate of Morgens*, 133 T.C. at 410. The provision allows a marital deduction for QTIP even though the surviving

**[\*6]** spouse receives only an income interest and has no control over the ultimate disposition of the property. *See id.* After the death of the surviving spouse, the property passes to beneficiaries designated by the first spouse to die. *See id.*; *see also Estate of Morgens v. Commissioner*, 678 F.3d at 771 ("The underlying premise of the QTIP regime is that the surviving spouse is deemed to receive and then give the entire QTIP property, rather than just the income interest. The purpose of the QTIP regime is to treat the two spouses as a single economic unit with respect to the QTIP property while still allowing the first-to-die spouse to control the eventual disposition of the property."). The Code prevents QTIP from escaping the estate and gift tax regime by ensuring that the surviving spouse includes such property in her estate at death or pays a gift tax on it if transferred during her lifetime. *See* §§ 2044, 2519; *Estate of Sommers v. Commissioner*, 149 T.C. 209, 223 (2017).

Three requirements must be met for a terminable interest property to qualify as QTIP: (1) the property must pass from the decedent, (2) the surviving spouse must have a qualifying income interest in the property for life, and (3) the executor of the estate of the first spouse to die must make an affirmative election to designate the property as QTIP. *See* § 2056(b)(7)(B); *see also Estate of Morgens v. Commissioner*, 678 F.3d at 771; *Estate of Higgins v. Commissioner*, 897 F.2d 856, 859 (6th Cir. 1990), *aff'g* 91 T.C. 61 (1988); *Estate of McCants v. Commissioner*, T.C. Memo. 1991-90, 61 T.C.M. (CCH) 2038, 2039–40.

III.    *The Bequests*

A.    *The $2 Million Bequest*

The parties agree that the $2 million bequest is a terminable interest and, therefore, does not qualify for the marital deduction unless it meets the requirements for an exception to the terminable interest rule. The only relevant exception noted by the parties is the exception for QTIP in section 2056(b)(7)(A).

The estate did not make a valid QTIP election for the $2 million bequest on Form 706. The estate admits as much by stating that it "failed to evidence such a QTIP election with respect to the $2,000,000 [b]equest on Part A of Schedule M of the Form 706." Accordingly, the $2 million bequest is not QTIP and is includible in decedent's estate as terminable interest property. *See Estate of Higgins v. Commissioner*, 897 F.2d at 859. And the estate has not identified anything on the return that shows anything resembling "affirmative intent" to make a

**[\*7]** QTIP election. *See id.* We do not find it necessary to address the other two requirements for QTIP because the estate's failure to make an affirmative QTIP election disqualifies the $2 million bequest from being QTIP. *See id.*

The estate contends that the $2 million bequest might still be QTIP because respondent did not mention a problem with the QTIP election (or lack thereof) during the audit process. Because of this supposed shortcoming, the estate invites us to adopt a novel substantial compliance approach and analyze whether the $2 million bequest might qualify as QTIP. The estate's argument is a nonstarter. The Court generally does not look behind a Notice of Deficiency. *Full-Circle Staffing, LLC v. Commissioner*, T.C. Memo. 2018-66, at \*25 ("A trial before the Court in a deficiency case is a de novo proceeding; our decision is based on the merits of the record before us and not on any previously developed administrative record."), *aff'd in part, appeal dismissed in part*, 832 F. App'x 854 (5th Cir. 2020). Since no QTIP election was made with respect to the $2 million bequest, that bequest is not QTIP.[3] *See Estate of Higgins v. Commissioner*, 897 F.2d at 859 (denying QTIP treatment for property when an estate did not affirmatively make a QTIP election on the return even though a QTIP election might have been advantageous to the estate).

The $2 million bequest is not QTIP. It is terminable interest property that does not qualify for the marital deduction and is includible in the estate. With respect to this bequest, we will grant respondent's Motion and deny the estate's Motion.

B.    *The $300,000 Bequest*

The parties disagree about whether the $300,000 bequest is a terminable interest under state law. If the $300,000 bequest is a terminable interest, as respondent contends, the bequest would not qualify for the marital deduction. § 2056(b). It would be includible in

---

[3] Furthermore, even if the Court looks behind the Notice of Deficiency, there is nothing in the record that reveals any reason for respondent to highlight during the audit or in the Notice of Deficiency the estate's failure to make a QTIP election. At each of those stages the estate's tax position, disclosed on the return, was that the $2 million bequest qualified for the marital deduction. Therefore, respondent had to determine whether the $2 million bequest qualified for the marital deduction and, until the estate raised the idea of QTIP treatment in the Petition before this Court, respondent had no reason to explain why QTIP treatment was not available to the estate with respect to the $2 million bequest. Simply put, respondent did not need to do the estate's job for it.

[*8] decedent's estate because the estate concedes that it does not qualify for any exception to the terminable interest rule (similar to the $2 million bequest, there was no QTIP election for the $300,000 bequest). *See id.* The estate contends that the $300,000 bequest is not a terminable interest. As a nonterminable interest, the bequest would qualify for the marital deduction and would be excluded from decedent's estate. *See id.*

Both parties agree that Kentucky law governs the dispute. Decedent died while residing in Kentucky and the executor of his estate resided in Kentucky when the Petition was filed.

Under the terms of the bequest found in the Second Amendment to the Revocable Trust, the $300,000 bequest was to be held by the trustee of the MCC Trust and paid to Ms. Creel at a fixed rate ($5,000 per month). Upon Ms. Creel's death, any undistributed amount of the $300,000 bequest was to be paid to her estate. If this final provision is effective upon Ms. Creel's death, then this bequest would not constitute a terminable interest because the property would pass in its entirety to her estate. *See id.* If the provision is void under Kentucky state law, then the $300,000 bequest would be a terminable interest because it would never be distributed to Ms. Creel's estate. Instead, the bequest would pass according to the distribution provisions of the MCC Trust agreement (to her descendants but not her estate).

The estate contends that the final provision of the bequest is effective under Kentucky state law because the $300,000 bequest formed an estate trust separate from the MCC Trust. This means that the $300,000 bequest qualifies for the marital deduction and is excluded from decedent's estate.

Respondent contends that the $300,000 bequest will fail to pass to Ms. Creel's estate because the terms of the Second Amendment to the Revocable Trust agreement granting the bequest conflict with the terms of the MCC Trust agreement. Specifically, respondent notes that (1) the MCC Trust agreement has terms governing the beneficiary's withdrawal rights and the distribution of trust assets upon the beneficiary's death and (2) because the MCC Trust is as an irrevocable trust, those terms cannot be modified. Respondent argues that the final sentence of the $300,000 bequest, which provides that "[a]ny undistributed amounts of [the $300,000 bequest] upon Maria C. Creel's death shall be paid to her estate," is void as an ineffective attempt to modify the terms of the MCC Trust.

**[\*9]** The question of whether the $300,000 bequest will go to Ms. Creel's estate upon her death or pass according to the distribution provisions of the MCC Trust turns on whether the $300,000 bequest created a separate trust from the MCC Trust.

The $300,000 bequest states:

> [T]he Trustee shall distribute the sum of $300,000.00 to the Trustee then serving as the Trustee of the [MCC Trust] (as the Trust may be amended), to be held as a living expense reserve for Maria [C.] Creel, to be distributed to her in the amount of $60,000.00 per year ($5,000.00 monthly) (plus earnings on such amount as determined by Trustee), for up to 60 months from the time of the initial funding of this Bequest. Any undistributed amounts of this Bequest upon Maria C. Creel's death shall be paid to her estate.

In Kentucky, the creation of a trust requires that "[1] The settlor has capacity to create a trust; [2] The settlor indicates an intention to create the trust; [3] The trust has a definite beneficiary . . . ; [4] The trustee has duties to perform; and [5] The same person is not the sole trustee and sole beneficiary." Ky. Rev. Stat. Ann. § 386B.4-020 (West 2018).

The $300,000 bequest clearly met four of the five requirements. Respondent does not dispute that decedent had the capacity to create a trust, or that the bequest has a definite beneficiary (namely Ms. Creel), or that the trustee has clearly laid out duties to perform, or that the trustee and the beneficiary are different persons.

We must decide whether the $300,000 bequest indicates an intention to create a new trust. On the basis of the use of the phrase "living expense reserve"[4] and the specification of distinct distribution provisions that clearly conflict with the existing provisions of the irrevocable MCC Trust agreement, we find that decedent intended to create a trust with the $300,000 bequest and intended for that trust to be administered by the same person administering the MCC Trust. Bolstering this conclusion is the fact that the $300,000 bequest contemplates how any remaining amount will be distributed upon Ms.

---

[4] In context the use of this phrase indicates decedent's intent to create a separate trust with the $300,000 bequest even if the phrase "living expense reserve" is not as indicative of that intent as the use of the phrase "separate trust" would have been.

**[*10]** Creel's death, whereas the $2 million bequest contains no comparable provision. Further, the $2 million bequest does not use the phrase "living expense reserve"—indicating a distinction between these two bequests. Decedent intended for the $2 million bequest to be transferred to the MCC Trust and governed by the provisions of that trust. But he intended for the $300,000 bequest to be a part of a legally distinct trust administered by the same trustee overseeing the MCC Trust.

Respondent contends that the $300,000 bequest indicates an intention to transfer money to the preexisting MCC trust because the bequest names the trustee of the MCC Trust by reference to that trustee's position instead of the trustee's personal name. We are unpersuaded by respondent's argument. Although respondent correctly notes that it would not be unusual for an individual to accomplish a transfer of property into an existing trust by naming the trustee of that trust, respondent has not identified any support for the proposition that naming a trustee of an existing trust is conclusive evidence that a transfer is intended to place property into that trust.

Furthermore, given that the distribution provisions in the $300,000 bequest conflict with those in the MCC Trust agreement, respondent's position would nullify decedent's clearly stated intent that the $300,000 bequest should pass to Ms. Creel's estate upon her death.

If the $300,000 bequest had used a personal name of an individual to be the trustee instead of naming the trustee of the MCC Trust, there would be no dispute that the "living expense reserve" created by that bequest was a trust under Kentucky law. Decedent's choice to name the trustee of the MCC Trust as the recipient for the $300,000 bequest does not change this conclusion, especially in the context of the conflicts between the terms of the $300,000 bequest and the terms of the MCC Trust agreement.

We hold that the $300,000 bequest created a trust separate from the MCC Trust. This separate trust did not constitute a terminable interest and fully qualified for the marital deduction.[5] With respect to

---

[5] This outcome makes sense in the context of the policy goals of the marital deduction. By excluding the $300,000 from decedent's estate and including it in Ms. Creel's estate, the marital unit will be taxed as a single unit. *See Estate of Letts*, 109 T.C. at 295 ("It is a basic policy of the marital deduction that property that passes untaxed from a predeceasing spouse to a surviving spouse is included in the estate of the surviving spouse.").

**[*11]** the $300,000 bequest, we will grant the estate's Motion and deny respondent's Motion.

IV.     *Conclusion*

To summarize, we find no dispute of material fact relating to each bequest and find that it is appropriate to enter decision as a matter of law.  The $2 million bequest is not QTIP because the estate failed to make a valid QTIP election for that property and it is fully includible in the estate as a terminable interest.  The $300,000 bequest qualifies for the marital deduction and is not a terminable interest because it will pass to Ms. Creel's estate upon her death.

We will grant respondent's Motion in part, deny respondent's Motion in part, grant the estate's Motion in part, and deny the estate's Motion in part.

In reaching our conclusions, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

To reflect the foregoing,

*An appropriate order will be issued.*